ARKANSAS STATE LICENSING BOARD FOR GENERAL
CONTRACTORS *v.* ROSAMOND.

4-9418 . 237 S. W. 2d 22

Opinion delivered March 12, 1951.

*Campbell & Campbell* and *William J. Smith,* for appellant.

*Hebert & Dobbs* and *Richard W. Hobbs,* for appellee.

HOLT, J. This cause comes here from a decree dismissing appellant's petition for injunctive relief against appellee, for the alleged violation by appellee of Act 124 of the Acts of 1939, enacted to "regulate the practice of General Contracting in the State of Arkansas." (Now § 71-701, *et seq.,* Ark. Stats. 1947.) This act was amended in a manner not material here by Acts 217 of 1945 and 149 of 1949.

Appellant alleged and contended that "appellee is engaging in the business of contracting as defined by the licensing law in that he is supervising the construction of a motor court and hotel in the City of Hot Springs, the cost of which will exceed $100,000, without a license to engage in the business of contracting in the State of Arkansas."

Appellee defended on the ground that he was acting as an employee only, was not a general contractor within the meaning of the above licensing law, and the trial court, as above indicated, upheld appellee's contention.

The material facts are not in dispute. The exact question presented here was decided by this court in the

recent case of *Arkansas State Licensing Board for General Contractors* v. *Lane,* 214 Ark. 312, 215 S. W. 2d 707.

The facts in the Lane case were not materially different from those presented here, and we there held against appellant's contention that Lane was a general contractor within the meaning of Act 124, and the definition of that term as shown in § 1 of the Act, § 71-701, Ark. Stats. 1947.

Appellee, Rosamond, here was employed by Mr. Anthony, the owner, as a foreman to supervise the workers in the construction of a building costing approximately $100,000. "Q. Then your sole agreement with Mr. Anthony was merely to act as a, might say, a foreman, is that correct? A. Yes, sir, that's right. . . . Q. Who pays the laborers up there? A. Mr. Anthony. Q. Do you have any right to pay any worker if he happened to quit the job at any time? A. No, sir, I don't. Q. All checks are made payable by Mr. Anthony? A. Yes, sir. Q. And he pays for all materials? A. He pays for everything, yes, sir. Q. If you did not perform your duties in conformity with Mr. Anthony's instructions, do you have any contract of employment which would secure your continued employment? A. No, sir, I have not. Q. Does he have the right to fire you at any time? A. He can fire me any time he gets ready. I am only working as an employee, same as the rest of them up there. . . . Q. In other words, you're working solely under the direction and under the orders of Mr. Anthony? A. Yes, sir, that's right."

Appellee had never worked for Mr. Anthony (owner) before and had no contract with him to construct the building. He was working on a basis of $125 per week, but should he fail to work a full week, his pay was figured on an hourly basis. He testified: "Q. 'I am working for $125 per week salary.' Q. Will you explain to the Court what you meant by that statement—the basis upon which you're paid in other words? A. If I don't get in a full week, it's figured out as hourly wages. Sometimes I just work when Mr. Anthony is on the job, he tells me what to do— Q. In other words, Mr. Rosa-

mond, you are working on an hourly basis? A. Yes, sir. Q. And $125 week salary which you stated you were receiving is based upon a 44-hour week? A. 44-hour week, yes, sir. Q. Now if you only work 20 hours during a week, you wouldn't receive $125, would you? A. No, sir.''

There were no bids on the construction of the building, and no contract let for its construction. Appellee paid for none of the material used. All purchases that he made were under the direction of Mr. Anthony, the owner, and were paid for by Anthony. Appellee could hire or discharge certain employees or workers on the job, but his acts in this connection could be nullified by Anthony.

It is suggested by appellant that we should overrule the Lane case, but this we decline to do. That decision is the law of the present case.

Accordingly, the decree is affirmed.