Dennis O. DAVIDSON et ux *v.* Lionel SMITH

75-142                                              530 S.W. 2d 356

Opinion delivered December 8, 1975
[Rehearing denied January 12, 1976.]

*Hugh L. Brown*, for appellants.

*Brazil & Roberts*, for appellee.

FRANK HOLT, Justice. This appeal results from a decree awarding appellee a mechanic's and materialmen's lien against certain real property owned by appellants. Appellant Davidson entered into a verbal agreement with appellee Lionel Smith. Smith was to restore a building to its original condition as a residence. Smith began work on the building sometime around the middle of September, 1973. About a month and one-half later, appellant decided to convert the building into his medical clinic. He discussed this change with the appellee, who undertook the job on a cost plus 10% basis. By December 31, 1973, appellant had paid appellee $27,552.40, part of which was a pre-payment for materials. On March 23, 1974, appellee presented a bill to appellant for material and labor plus 10% for "repairs and Remodeling in Old Building" and "New Part Addition" totaling $57,552.40. When appellant refused to pay appellee the balance, appellee brought suit alleging a total of $21,490.40 was due and unpaid. Simultaneously with Smith's suit, Nabholz Supply Company, Inc., a supplier for the job, brought a suit against appellants for $10,445.35 for labor and materials furnished and used in the remodeling project. The claim of Nabholz was also included in appellee Smith's complaint. By separate answer appellant Davidson interposed various defenses to Smith's action. The court found that appellants owed appellee Smith, after certain credits, the sum of $19,103.50 plus interest ($14,862.09 plus interest of which is lienable against the interest of appellants in the real property). The court further found that Nabholz had "sold materials to and performed labor for use in the erecting of improvements and making repairs to existing improvements upon [appellants' land] **** and further performed other labor and furnished other goods and materials unto the said Lionel Smith," the appellee, and awarded a judgment against Smith in the sum of $10,514.37 plus interest ($8,511.87 plus interest of which is lienable against the interest of appellants in the premises). The court also found that the materialmen's lien in favor of Nabholz was included within the mechanic's and materialman's lien which was awarded Smith and that satisfaction by Nabholz of its lien shall to that extent constitute a satisfaction of the mechanic's and materialman's lien in favor of Smith. It appears that pending this appeal the judgment awarded Nabholz was voluntarily paid by Davidson, the lien dismissed, and the judgment satisfied of record.

Therefore, Nabholz is no longer a party in this appeal. The court also found that Smith was not precluded from maintaining his action for the balance due under his agreement by the provisions of Ark. Stat. Ann. § 71-701, et seq. (Supp. 1973).

For reversal appellant first contends that the court erred when it denied the motion of appellant to dismiss the claims of Smith pursuant to the provisions of §71-701, et seq, and in particular § 71-713. § 71-713 provides:

> Any contractor who for a fixed price, commission, fee or wage, attempts to or submits a bid or bids to construct or contract to construct, or undertakes to construct, or assumes charge in a supervisory capacity or otherwise, of the construction, erection, alteration or repair, of any building, highway, sewer, grading or any other improvement or structure, when the cost of the work to be done by the contractor, including but not limited to labor and materials, is twenty thousand dollars ($20,000.00) or more, without first having procured a license to engage in the business of contracting in this state, or who shall present or file the license certificate of another, or who shall give false or forged evidence of any kind to the Board, or any member thereof, in obtaining a certificate of license, or who shall impersonate another, or who shall use an expired or revoked certificate of license, shall be deemed guilty of a misdemeanor, and shall be liable to a fine of not less than one hundred dollars ($100.00), nor more than two hundred dollars ($200.00) for each offense, each day to constitute a separate offense. No action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this act ****.

§ 71-701 provides:

> For the purposes of this act [§§ 71-701 — 71-720], a "contractor" is defined to be any person, firm, partnership, copartnership, association, corporation, or other organization, or any combination thereof, who for a fixed price, commission, fee or wage attempts to or

submits a bid to construct, or contracts or undertakes to construct, or assumes charge, in a supervisory capacity or otherwise, of the construction, erection, alteration or repair, or has or have constructed, erected, altered, or repaired, under his, their or its direction, any building, highway, sewer, grading or any other improvement or structure, except single family residences, when the cost of the work to be done, or done, in the State of Arkansas by the contractor including but not limited to labor and materials, is twenty thousand dollars ($20,000.00) or more. It is the intention of this definition to include all improvements or structures, excepting only single family residences.

Here the appellants argue that Smith was a contractor within the terms of §71-713 and that he was in violation of the provisions of that statute which strictly prohibit the enforcement of the contract. Appellee Smith responds that he was a mere employee of appellant Davidson and the statute is, therefore, inapplicable citing *Ewing* v. *City of Helena*, 207 Ark. 702, 182 S.W. 2d 940 (1944). In a later case we construed the statutory meaning of the word "contractor" in *Ark. St. Lic. Bd. for General Contractors* v. *Lane*, 214 Ark. 312, 215 S.W. 2d 707 (1951). There the State Board sought to enjoin the activities of a "supervisor" who was directing the construction of a drive-in theater. The supervisor was solely employed by the company which was building the drive-in. He did not hold himself out as an independent operator. Subcontractors for the drive-in dealt with another official of the company and the supervisor merely oversaw their performance. He had no authority to hire or discharge any workman, paid no workman, procured no material and had no other employment. We affirmed the trial court's finding that the supervisor was not a "contractor" within the purview of the statute. The court first noted that licensing statutes of this type "are to be construed strictly in favor" of the individual, the appellee here, and "every doubt as to construction must be resolved in favor of the one against whom the enactment is sought to be applied." We then referred to the definition of a "contractor" in 17 C.J.S. Contracts §11, which identified a contractor as a party who contracts or covenants to construct works or erect buildings, perform work or supply articles at a certain price

or rate usually for a specific improvement under a contract with an owner. We then quoted "[C]ontractor is ordinarily understood to be a person who undertakes to supply labor and materials for specific improvement under a contract with the owner." Observing that the supervisor there was merely an employee of the owner, and not an independent operator, we held that he was outside of the statute, he had no interest in any of the construction contracts for the drive-in, he had no hiring authority, and he paid for none of the materials. We reaffirmed the standards delineated in *Lane* in *Ark. State Licensing Board for General Contractors* v. *Rosamond,* 218 Ark. 529, 237 S.W. 2d 22 (1951).

In the case at bar it is undisputed that appellee Smith is unlicensed and the contract sought to be enforced by him involved far in excess of $20,000. Smith testified that he was merely a carpenter employee acting under Davidson's supervision. Smith's son, Lionel Jr., and son-in-law, Barnett, testified that the appellant Davidson or others acting on his behalf continually supervised their work and made constant changes. Smith admitted in his pretrial deposition that he was an unlicensed contractor with thirty years experience. It was only at the trial he protested that he was only a carpenter employee. Objective factors preponderate that Smith was indeed a contractor within the statutory proscription. Smith admittedly undertook to renovate and remodel appellants' building on a cost-plus 10% agreement, which is fixed rate contract. The owner of Nabholz testified that he supplied material and labor to Smith on the Davidson project. He said he subcontracted on a labor and material basis and not as a contract figure. They billed Smith direct. Nabholz's manager of the heat, air, plumbing, and electrical department testified he believed he was contacted by Smith and they talked about the work to be done and the price. He said he dealt with Smith. Further, there was no contract and the work was done on a cost-plus basis and charged to Smith. The manager of the floor covering department for Nabholz testified that he was first contacted by appellee's son. However, Smith and none of his people "working for him" had anything to do with the carpet after he was contacted. He testified that the materials and labor furnished by his department were "all billed to Mr. Smith."

An installer mechanic for a wallpaper and drapery business testified he was employed by Nabholz (Smith's subcontractor) to install the rods and drapes and hang the wallpaper in the Davidson Clinic. To his knowledge Smith had nothing to do with the selection of the drapes and wallpaper or where they were to be hung. He testified further that Smith had no supervision or control over his work. "No one actually supervised" his work. The manager of the electrical department for Nabholz testified that Smith called him and asked "if he could do some work for him" on the Davidson Clinic and was furnished a "blueprint of sorts." He agreed with Smith to do the "work" on a "set price on labor and 20% on material." Any changes he made were through Smith and he had very little dealing with appellants. He dealt through Smith. The individual who did the billing for Nabholz testified that its account for the "Davidson job" was in Smith's name and was billed direct to him. Approximately 90% of these tickets were signed and picked up by Smith or one of "his" people.

Dr. Davidson testified that his check, an exhibit, dated December 31, 1973, was made payable to "Lionel Smith, primary contractor, plumbers and electricians, subcontractors, Nabholz suppliers and materials, $19,795" and that their agreement of cost plus 10% of the material and labor was not to exceed $35,000 on the completed project. Smith acknowledged that a minimum of $30,000 was discussed as the cost of the original remodeling.

Barnett, Smith's son-in-law, testified that Smith paid them and he had no real contact money-wise with Dr. Davidson. Lionel Smith, Jr., testified that he turned his "time" in to his father. He did not share in the 10% profits with his father. At trial Smith said he was a board member of the local County Home Builders' Association. He and his two co-workers were being paid $4 per hour. He did some of the supervising of his co-workers but not altogether and paid them after he was paid by appellant Davidson. He paid his co-workers, however, "out of his own pocket" before Davidson paid him anything. The payment on the cost plus 10% job "was between [me] and Dr. Davidson." He said he wasn't the "boss" in one way of speaking." He didn't

withhold taxes and each man reported his own taxes and social security reports. In his pretrial deposition, as indicated, Smith testified he was a contractor for the past thirty years.

In summary, Smith verbally agreed with Davidson to accomplish a medical clinic project at a fixed rate; i.e., cost of material and labor plus 10%. He received 10% profit on the labor of his own co-workers. He subcontracted work and material to Nabholz. He supplied the labor and tools, authorized workmen from Nabholz to come to the site, supply materials, perform work, and charged the items to himself. Smith paid Nabholz through his own account. Smith averred in his complaint that he performed labor and provided materials in the construction and remodeling of a building (for a medical clinic) and that a balance of $21,490 (of the total cost of $57,164.61) was due and unpaid by appellants. The complaint included the Nabholz claim which, as indicated, was charged direct to Smith. The chancellor found that Smith himself owed Nabholz for the material and labor furnished to him in the building project. It is undisputed that Smith is not licensed and that the costs on the cost plus 10% agreement were far in excess of $20,000, the statutory limit. We find the evidence preponderates that Smith's activities, pursuant to his cost plus agreement, were not that of a mere foreman or employee and further that Smith was a "contractor" as defined in § 71-701 and within the standards enunciated in *Lane, supra*. Consequently, it becomes unnecessary to discuss appellants' other contentions.

The decree is reversed and the cause dismissed.