## AMERICAN SHEET METAL WORKS, INC. *v.* CON-ARK BUILDERS, INC. et al

81-225                                                   635 S.W.2d 241

### Supreme Court of Arkansas
### Opinion delivered June 21, 1982
[Rehearing denied July 19, 1982.*]

*Bridges, Young, Matthews, Holmes & Drake* and *Holmes, Holmes & Trafford,* for appellant.

*Friday, Eldredge & Clark,* by: *Bill S. Clark,* for appellees.

DARRELL HICKMAN, Justice. This is an appeal from the trial court's directed verdict in favor of the appellee, Con-

---

*HAYS, J., would grant rehearing; HOLT, J., not participating.

Ark Builders, and others, finding that the appellant, American Sheet Metal Works, Inc., did not have a binding contract to be a subcontractor to Con-Ark, which had the general contract to construct the medium security building at the Cummins unit of the Department of Correction. American Sheet Metal Works had sued the appellees for damages for breach of contract.

We agree with the trial court that the issue was a question of law and find the court properly decided that issue.

Con-Ark Builders was the general contractor bidding on the medium security building at the Cummins unit of the Department of Correction. American Sheet Metal Works made a telephone bid to several general contractors, bidding on various mechanical portions of the job. American's bid was $643,969.00 and it was the low bid for its portion of the job. Con-Ark used American Sheet Metal's bid as part of its overall bid and was awarded the construction project as the low bidder. Later, Con-Ark had some reservations about the ability of American Sheet Metal Works to perform the job. Of the total subcontract of $643,969.00, approximately $400,000.00 of it was plumbing. It was learned that American Sheet Metal Works, which was primarily a sheet metal, electrical, air conditioning and mechanical contractor, intended to use Southern Mechanical, a Memphis, Tennessee firm, to perform the plumbing part of the subcontract and that Southern had no license to perform construction work in Arkansas. Con-Ark also questioned whether American Sheet Metal Works could obtain a bond in the amount of the subcontract, and, Con-Ark learned that American Sheet Metal Works' Arkansas license did not authorize American Sheet Metal for the specialty of plumbing. Con-Ark notified American Sheet Metal that it would not enter into a written contract with American Sheet Metal on this job; instead Con-Ark obtained permission from the State to substitute one of its subsidiaries, Nabco Mechanical, Inc., to perform this subcontract at the amount bid by American Sheet Metal Works.

Essentially American Sheet Metal argues that the trial court was wrong in finding as a matter of law that it did not have an enforceable contract with Con-Ark Builders. What American Sheet Metal Works could not avoid at trial, nor with us, is that its Arkansas license, at the time of the negotiations, did not authorize American Sheet Metal Works to do plumbing. Later, American Sheet Metal Works did have its license amended to reflect that it was authorized to perform plumbing work. American insisted below and insists on appeal that the missing authorization was due to a mistake. But the question has to be, could Con-Ark be forced to accept the proposal in view of the deficiency on the license and the other considerations that we have mentioned?

American Sheet Metal Works, Inc. argues that Ark. Stat. Ann. § 14-613 (Repl. 1979) was circumvented by Con-Ark. Ark. Stat. Ann. § 14-613 is referred to in the construction industry as the "name your subcontractor law." Generally it requries that a general contractor offer the first opportunity for subcontracts to Arkansas contractors qualified as mechanical, electrical, roofing and sheet metal contractors engaged in plumbing, heating, ventilating, air conditioning, electrical wiring and illuminating fixtures and other such specialties.

However, the statute reads that the general contractors must "first offer an opportunity to Arkansas *licensed and qualified* . . . subcontractors." [Emphasis added.] Con-Ark insisted that American Sheet Metal Works, Inc. was not licensed and qualified at the critical time and we must agree.

Essentially, American Sheet Metal Works' argument is one of equity and implies that Con-Ark Builders used bad faith. It is suggested that American Sheet Metal Works was simply used to obtain the bid and then Con-Ark deliberately awarded the subcontract to one of its subsidiaries. American Sheet Metal Works argues that it found a qualified Arkansas subcontractor to perform the plumbing work; that it proved that it could be bonded for the full amount and that later it had its license amended to include plumbing. But all these factors arose after the fact and could merely be used as arguments to persuade Con-Ark to sign a contract with

them. These arguments avoid the question of law involved and that is, whether Con-Ark Builders was required to accept American Sheet Metal Works' proposal after the State of Arkansas awarded the contract to Con-Ark. The Arkansas statute did not require Con-Ark to accept the bid and, consequently, we cannot.

Affirmed.

HOLT, J., not participating.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I thoroughly disagree with the decision to affirm. I believe the question of whether American Sheet Metal Works was "licensed and qualified" is one of fact and the trial court erred in taking the case from the jury at the close of the evidence.

The majority agree with the trial court that the issue was a question of law, correctly decided. By taking that view, the opinion shuns the necessity of dealing with the evidence, and avoids both a formidable task and an unconvincing result. But having declared the issue to be one of law, the opinion fails to state with any clarity the rule of law it relies on. No cases are given and Ark. Stat. Ann. § 14-613 is cited merely as requiring that general contractors must "first offer an opportunity to Arkansas *licensed and qualified . . .* subcontractors." And Con-Ark insists that American Sheet Metal Works was not licensed and qualified. By avoiding any specific citation of the law, the majority leaves the dissent with the burden of proving that American Sheet Metal was not, under the law, unlicensed and unqualified.

As to the license, it is undisputed that American Sheet Metal was licensed and if the license was insufficient by not including a "mechanical specialty designation" then where is the law that makes that requirement? It is certainly not to be found in § 14-613, the only statute cited. Appellees' brief recognizes the void and offers § 71-710 of the Contractor's Licensing Law of Arkansas as giving the Licensing Board power to limit the license of a contractor "to the character of

work for which the applicant is qualified." But the problem here is there was absolutely no evidence presented that the Board had limited the license of American Sheet Metal; to the contrary, there was evidence from which the jury could have readily determined that the Licensing Board considered American Sheet Metal fully qualified to perform the work on which it had bid. Moreover, we have held licensing statutes must be construed strictly *in favor* of an individual against whom such enactments are sought to be applied. *Davidson* v. *Smith*, 258 Ark. 969, 530 S.W.2d 356 (1975). Con-Ark's argument would have us do the reverse. If a litigant under our system is to be deprived of the opportunity to present his cause to a jury on the basis of an adverse rule of law, it ought to be possible (and essential) to clearly state what that rule is and where in our code or our cases it is to be found. Anything less is as unfair to the successful party as it is to the losing party.

Perhaps American Sheet Metal Works was thought to be unqualified, which § 14-613 *does* require. But that surely is a question of fact and the burden of proving that allegation was on Con-Ark. The proof was to the contrary, evidenced by the fact that Con-Ark's motion for a directed verdict made no claim that American Sheet Metal was not qualified.

For the sake of argument, let us assume that by inference § 14-613 does require that the license of American Sheet Metal Works bear a mechanical specialty designation in order for it to take advantage of the statute and enforce its bid. The evidence presented in this case is such that the jury could reasonably infer that American Sheet Metal did in fact have a mechanical specialty designation which was simply omitted from its license through oversight. This was precisely the import of the testimony of Mr. Robert Carter and others that American Sheet Metal was a mechanical contractor licensed since 1969; had done mechanical work previously for Con-Ark; that the company had requested a mechanical designation from the Licensing Board and was unaware that its license failed to include the designation; that when Con-Ark asked about the mechanical designation he appeared before the Licensing Board to point out the

mechanical designation was missing and the license was reissued for the years 1977-1978 to show the mechanical specialty effective July 1, 1977. When this evidence is considered in light of the following letter to American Sheet Metal from the Licensing Board, there is ample evidence to submit the issue to the jury:

Dear Mr. Carter:

This is to advise that it is the Board's opinion that you are presently qualified to do the mechanical work *you now have under contract* as well as any future contracts undertaken. (My italics.)

Your Certificate of License has been amended to read as follows and mailed to you under separate cover:

"SPECIALTY: Mechanical — Sheet Metal — Air Conditioning"

Yours very truly,

CONTRACTORS LICENSING BOARD
/s/ Howard Jones, Administrator

The result reached by the majority goes against what we have said in a host of cases: On appeal a directed verdict is reviewed by taking that view of the evidence most favorable to the party against whom the verdict is directed, together with all reasonable inferences which can be drawn therefrom, and we must reverse if there is *any* substantial evidence tending to establish an issue in his favor. *Farm Bureau Mutual Insurance Company* v. *Parks,* 266 Ark. 454, 585 S.W.2d 936 (1979), and *Housing Authority of the City of Texarkana* v. *E. W. Johnson Construction Co., Inc.,* 264 Ark. 523, 573 S.W.2d 316 (1978). Even more, we have said, correctly, that where the evidence is not in dispute if it is such that fair-minded men might draw different conclusions from it, a jury question is presented. *Moore Ford Company* v. *Smith,* 270 Ark. 340, 604 S.W.2d 943 (1980); *Williams* v. *Curtis,* 256 Ark. 237, 506 S.W.2d 563 (1974).

The majority opinion states that American Sheet Metal's arguments that it was qualified, capable of being bonded, and had its license amended all "arose after the fact" and Con-Ark was not required under § 14-613 to accept American Sheet Metal's bid after the State of Arkansas awarded the contract to Con-Ark. The reasoning ignores two things: First, that § 14-613 makes it *mandatory* for Con-Ark to award the subcontract to the subcontractor whose *name and bid* Con-Ark listed on its bid to the State, and it is undisputed that Con-Ark listed American Sheet Metal and American Sheet Metal's bid of $642,969.00 on its bid to the State. Second, it ignores the fact that although Con-Ark wrote to American Sheet Metal on February 22, 1978, to ask its interpretation of § 14-613 as to its having the necessary license to bid any plumbing, heating or ventilating work, adding, "Sure hope we can work something out to our mutual benefit," there was evidence that two weeks earlier on February 8 Con-Ark was engaged in efforts to acquire the entire contract for itself by substituting Nabco, simply a division of Con-Ark, for American Sheet Metal, which is precisely what § 14-613 seeks to avoid. The fact is that Con-Ark managed to accomplish this objective to the loss of American Sheet Metal, and whether by so doing Con-Ark violated § 14-613 and rendered itself liable to American Sheet Metal should be resolved by a jury and not by a directed verdict.