LILLIAN A. RELYEA ET AL. *v.* PACIFIC FIRE INSURANCE COMPANY ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 4th—decided November 1st, 1938.

*David Haymond,* for the appellant (defendant).

*Richardson Bronson,* for the appellees (plaintiffs).

BROWN, J. The plaintiffs, on September 9th, 1935, purchased of the General Auto Sales Company an Auburn Speedster automobile as a new car for $2500, giving their notes for certain monthly instalments to cover the unpaid $1880 of this price. These notes were secured by a conditional bill of sale which the Sales Company forthwith assigned to the Colonial Acceptance Corporation together with the notes. This corporation was engaged in the business of financing sales of automobiles for dealers. In connection with this corporation's operations, the Pacific Fire Insurance Company, hereinafter referred to as the defendant, had issued to it a so-called "master policy" of non-valued insurance against fire and theft covering all motor vehicles of which it financed the sale. The Acceptance Corporation agreed to see that all motor vehicles financed by it were insured thereunder. By its terms the policy became operative immediately upon assignment to the Acceptance Corporation of the notes and conditional bill of sale, for the benefit of the seller, the Acceptance Corporation, and the purchaser of the car financed, as their several interests might appear.

The policy provided that the Acceptance Corporation should furnish the defendant with particulars of insurance as to each motor vehicle financed by it, and

that the defendant should "promptly cause to be issued a certificate of participation which shall specifically evidence the insurance upon such motor vehicle under the policy." The defendant furnished to the Acceptance Corporation forms headed, "Notice of Insurance Coverage," which it in turn made out in quadruplicate upon the purchase of the plaintiffs' notes from the Sales Company. Two copies it mailed to the defendant and the other two it retained, failing to forward one of these to the plaintiffs, as was its practice. The Acceptance Corporation was authorized by the defendant to issue these notices of insurance coverage which constituted the certificate of participation provided for in the master policy.

The printed portion of the third warranty by the assured in the master policy consists of column headings with a blank space beneath each, calling for various descriptive details as to make, model, price, etc., of the cars insured. One of these headings reading "Purchased by Assured" has a subheading, "New or 2nd Hand." In the space below these printed words appears the typewritten word "Various." Among similarly arranged printed headings calling for descriptive details in the certificate of participation covering the plaintiffs' car is one reading: "New or Used." Under this is the typewritten word "New." This was inserted by the Acceptance Corporation, designated in the conditional bill of sale as the plaintiffs' agent, from a description to that effect in the conditional bill of sale. The car was damaged by fire on January 30th, 1936, in the amount of $1825. The plaintiffs' demand for the payment of this sum under the policy was denied by the defendant on April 28th, 1936.

To the plaintiffs' complaint seeking recovery upon the policy, the defendant interposed a special defense that the Acceptance Corporation in procuring the in-

surance as agent for the plaintiffs, represented the Auburn car which was in fact a "used" car, to be a "new" car, and that this constituted a material misrepresentation and breach of warranty to the defendant concerning the description of the car, excusing it from liability. In addition to the undisputed facts recited in the three preceding paragraphs the court properly found these further facts. The Sales Company was the distributor of Auburn cars for the State of Connecticut, and the plaintiffs were Auburn dealers for the Waterbury territory. This Auburn car was a special model of which but twenty-six had been manufactured, and could be procured on order only after a period of six months. It was delivered to the Sales Company about the first of May, 1935. It had novel features of construction and design and could attain a speed of one hundred miles per hour. Up to June 8th, 1935, it was driven to various places in the State for purposes of display, was operated by salesmen for demonstration purposes, and by prospective customers, and prior to its sale to the plaintiffs was driven a total of from three to four thousand miles. On June 8th, 1935, it was damaged in a collision to the extent of $515.65, and in consequence was in the repair shop for two months. Some parts were replaced, others repaired, and the car was repainted, restoring it to perfect condition. Its intrinsic value was then no less than when it was originally delivered to the Sales Company. Minor repairs and adjustments were also made from time to time. Thereafter it was on display in the distributor's sales room and operated infrequently solely for demonstration purposes until sold to the plaintiffs, September 9th, 1935.

The court concluded in substance that the words "new or used" in the certificate of participation were employed synonymously with the words "new or

second hand" in the master policy; that the car was not "second hand"; and that therefore there was no breach of warranty by the plaintiffs. The question determinative of this appeal is whether the court erred in this conclusion.

It is provided in the master policy that the certificate of participation "shall specifically evidence the insurance upon such motor vehicle under this policy, . . . on a form furnished by the Company [the defendant], such form of certificate to identify the motor vehicle, shall name the Purchaser and state the purpose for which the motor vehicle is to be used and the sum to be insured thereon." The certificate of participation after referring specifically to the master policy, goes on to state in what respects and to what extent "the automobile which is described herein is insured," and to advise the purchaser (the plaintiffs) that the master policy "is subject to all the terms, conditions, stipulations, provisions, exclusions, warranties and endorsements which appear hereon or attached hereto." By these provisions these two instruments are integrated together to evidence the contract of insurance sued on.

The court found that the descriptive word "new" as applied to automobiles is used in varying meaning among dealers in cars, and that time elapsed since manufacture, extent of use incident to the dealer's business prior to sale to a customer, accident experience, and the original sale at retail, are each respectively the factor which different dealers regard as determinative whether a car is "new" within one of these several meanings. It further found that for the purpose of determining the amount of premium to be charged for insurance, a car is "new" for the eighteen months next after the dealer's original sale of it to a member of the public, and that the same premium,

which is at the highest rate, is charged throughout this period without reference to its ownership, extent of use, or accident experience. These findings are supported by the evidence. Since the meaning of the typewritten word "new" is doubtful, the trial court properly resorted to extrinsic evidence in determining in what sense it was used in this warranty. *Smith* v. *Crockett Co.*, 85 Conn. 282, 288, 82 Atl. 569; *Adams* v. *Turner*, 73 Conn. 38, 45, 46 Atl. 247; *Parker* v.' *Selden*, 69 Conn. 544, 552, 38 Atl. 212. The construction most favorable to the insured is to be adopted. *King* v. *Travelers Ins. Co.*, 123 Conn. 1, 4, 192 Atl. 311; *Standard Fur Cutting Co.* v. *Caledonian Ins. Co.*, 113 Conn. 108, 113, 154 Atl. 153; *Dresser* v. *Hartford Life Ins. Co.*, 80 Conn. 681, 710, 70 Atl. 39.

The subheading in the policy "new or second hand" and the heading in the certificate of participation "new or used" were apparently intended to cover the same ground. As regards an article purchased in the market, the ordinary meaning of the words "second hand" is that the article has previously been owned by someone other than the manufacturer or dealer whose business it is to sell such articles to the public. *Texas & P. Ry. Co.* v. *Wilson Hack Line*, 46 Tex. Civ. App. 38, 40, 101 S. W. 1042. The trial court was warranted in concluding that the words "new or used" as these appear in the certificate of participation were employed synonymously with the words "new or second hand" under the warranties in the master policy and as such were designed to elicit information as to whether the car insured was one purchased from the dealer to whom the car was shipped from the factory or from some person who acquired ownership of it after such dealer had sold it. In determining the meaning of terms used in a policy of insurance, "the settled construction given by the commercial world to stipulations

therein may, though differing from the natural import of the words, be sanctioned by the courts." 1 Couch, Insurance, 366, § 179. The court's determination, therefore, that this car never having been sold at retail to a customer, was not a "second hand" car was correct. From this it follows, as the court further concluded, that the plaintiffs made no untrue statement concerning the car and so did not commit a breach of warranty as claimed by the defendant.

The defendant is entitled to no correction of the finding material to this appeal. Its further claim that the plaintiffs' recovery of interest should be confined to interest on the difference between its rejected offer of $800 in settlement and the $1850 loss actually sustained by the plaintiffs, not pressed on its brief, is without merit. *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 398, 65 Atl. 134. The court's judgment in this case was not only legally correct but in full accord with the strong equities apparent upon the record. The plaintiffs, in addition to admittedly acting in entire good faith throughout, were not even informed that the Acceptance Company had used the wording complained of, had paid the top premium rate, and were merely claiming the actual value of the property destroyed, the amount of which was not disputed.

There is no error.

In this opinion the other judges concurred.