MOORE FORD COMPANY *v.*
Gladys Hurley SMITH

80-68                                                604 S.W. 2d 943
Supreme Court of Arkansas
Opinion delivered September 22, 1980

*Hoofman & Bingham, P.A.*, by: *John Biscoe Bingham*, North Little Rock, for appellant.

*J. R. Nash*, North Little Rock, for appellee.

JOHN R. ELROD, Special Justice. This is an action for misrepresentation.

In March, 1977, appellee purchased a new 1977 Mustang automobile from Moore Ford Company. She executed a conditional sales contract, assigned by Moore Ford Company to Ford Motor Credit Corporation, consistently made her monthly payments thereon, and drove the car for approximately sixteen months before she dis-

covered that it had prior body work performed on the hood and one fender. Thereupon, she brought this cause of action, alleging that the car had been represented as a new car at the time of purchase when in fact it was something less because of the repaired body damage.

The jury returned a plaintiff's verdict, awarding $1,250 compensatory damages and $15,000 punitive damages, from which Moore Ford appeals, citing eight points for reversal, consolidated into five for purposes of this discussion.

## I.

First, appellant argues that the trial court erred in refusing its proffered instruction defining a new and unused automobile. The requested instruction was:

> In determining whether a vehicle is a new vehicle factors which you may consider in determining whether a vehicle is a new vehicle include:
> (1) Time elapsed since manufacture;
> (2) Extent of use incident to dealer's business before sale to customer;
> (3) Whether the customer is the first one to buy the car at retail.

Appellant cites *Relyea* v. *Pacific Fire Ins. Co.*, 124 Conn. 654, 2 A. 2d 377 (1938) as its authority. Appellee, however, correctly points out that the *Relyea* court included a fourth factor — that of "accident experience", or prior exposure to accidents, in its approved test of newness. A party which fails to offer a correct instruction cannot complain on appeal of its rejection. *New Empire Ins. Co.* v. *Taylor*, 235 Ark. 758, 362 S.W. 2d 4 (1962).

Furthermore, it was unnecessary to the resolution of the issues of the case that the jury be instructed in any manner on the definition of a "new" car. It was uncontroverted that the appellee believed she had purchased a new car. It was uncontroverted that the appellant represented the vehicle as a new car in the generally accepted sense of those words as they

apply in the retail marketplace. The odometer showed six miles at the time of purchase.

## II.

Appellant next asserts that reversal should occur because the trial court erred by refusing to give a requested instruction regarding its defense of waiver, and that the court erred in refusing to grant appellant's motion for directed verdict, contending the appellee's continuation of her monthly payment obligations to Ford Motor Credit subsequent to her discovery of the misrepresentation constituted waiver as a matter of law.

The requested instruction was:

If, from a preponderance of the evidence, you should find that after the plaintiff discovered that the automobile in question was not a new vehicle, that she knowingly continued to make her monthly payments as they fell due, then you are told that this constituted a waiver by the plaintiff of her right to maintain this action, and your verdict should be for the defendant, Moore Ford Company.

This instruction would require a defendant's verdict because it was an uncontroverted fact that Mrs. Smith continued making her monthly payments to Ford Motor Credit following her discovery of prior damage. The trial court properly rejected the instruction and the motion. Continuation of payments, by itself, does not necessarily constitute a waiver as a matter of law.

We defined the defense of waiver in *Ray Dodge, Inc.* v. *Moore*, 251 Ark. 1036, 479 S.W. 2d 518 (1972):

Waiver is the voluntary abandonment or surrender by a capable person of a right known to him to exist, with the intent that he shall forever be deprived of its benefits. It may occur when one, with full knowledge of the material fact, does something which is inconsistent with the right or his intention to rely upon it. . . . (I)t

is essential that it be shown that the defrauded party intentionally condoned the fraud, affirmed the contract, and abandoned his right to recover damages for the loss resulting from the fraud.

Appellant cites *Union Mtr. Co.* v. *Turbiville*, 223 Ark. 92, 264 S.W. 2d 592 (1954) to support its position, and it is correct that in *Union* this court gave its approval to an instruction which may appear to conflict with the *Ray Dodge* definition of waiver:

If . . . you . . . find that after the Plaintiff discovered the automobile . . . was not a new car . . . she knowingly continued making her monthly payments . . ., this constituted a waiver by the Plaintiff of her right to maintain the action, and your verdict should be for . . . Union Motor Company.

However, in the *Union Motor* case the specific fact question being decided by the jury, on controverted evidence, was whether the plaintiff had continued making her payments after she knew the car was not a new car, for at some point in time, after consultation with an attorney, she ceased making payments. The above instruction properly framed the issue for a general verdict based on the specific facts of that case.

Here, Mrs. Smith learned of the repaired damage in June or July, 1978, and filed suit in October, 1978. She could not have waived her right to maintain suit by making payments on the purchase money note prior to her knowledge of the misrepresentation because up until that moment there was not a right known by her. The payments made by her following institution of suit were certainly made under protest and, therefore, no waiver could have occurred after October, 1978. Thus, the fact question presented at trial was whether payments for July, August, and September, at the most, constituted a waiver. The *Union Motor* instruction under these facts would not have been appropriate.

In most cases the question of waiver will be one of fact, and the *Ray Dodge* instruction will be proper. It is unrealistic to expect a layperson plaintiff to be aware that he is

automatically, as a matter of law, waiving a cause of action otherwise existing, simply by the act of making monthly payment on an installment contract after discovery of a misrepresentation by the seller. That is not to say that there could never come a time when long continued payments, coupled with knowledge of material facts, could constitute waiver as a matter of law. The facts of each case will control the instruction given.

It being unnecessary to do so, we will not discuss the ramifications of the fact that the payments here were made to a third party assignee and not directly to the tortfeasor.

### III.

Next, appellant urges that the trial court erred in refusing its requested instruction regarding the quality of circumstantial evidence necessary to prove fraud which read as follows:

> Fraud or misrepresentation . . . may be proven by direct or circumstantial evidence. If proved by circumstantial evidence, the circumstantial evidence must be so strong and well connected as to clearly show fraud.

Appellee correctly points out that all of the Arkansas cases cited by appellant in support of its assertion involved the reformation or cancellation of written instruments. [*DuFresne* v. *Paul*, 144 Ark. 87, 221 S.W. 485 (1920); *Stringer* v. *Georgia State Savings Association of Savannah*, 218 Ark. 683, 238 S.W. 2d 629 (1951); *Harris* v. *Shaw*, 224 Ark. 150, 272 S.W. 2d 53 (1954)].

The jury was instructed in accordance with AMI 104 which defines circumstantial evidence. Certainly circumstantial evidence can serve as a basis for the jury to infer fraud just as to infer any other fact. *Ray Dodge, supra.* We hold there was no error.

### IV.

Appellant contends reversal should occur because

appellee failed to provide substantial evidence that appellant knew or should have known of the alleged misrepresentation, and that she failed to produce substantial evidence of the amount of the compensatory damages awarded to her, $1,-250. At trial these issues were raised by motions for directed verdict and by a motion for a new trial. These issues present a close question which we resolve in favor of the appellee.

The test of when the trial court may direct a verdict without abusing its discretion has often been stated by this court. The evidence and all reasonable inferences deducible therefrom must be viewed in the light most favorable to the party against whom the verdict is directed, and if there is any conflict in the evidence or the evidence is not in dispute but is in such a state that fair-minded men might draw different conclusions therefrom, a jury question is presented. See *Williams* v. *Curtis*, 256 Ark. 237, 506 S.W. 2d 563 (1974).

Here, there was evidence in the form of business records presented by a Ford Motor Company representative that the Mustang was in undamaged condition when it arrived at Moore Ford. Likewise, there was testimony from a representative of Moore Ford that its records showed no damage occurring to the vehicle while it was in Moore Ford's possession prior to sale. Mrs. Smith testified that the automobile suffered no damage while in her possession other than damage to a part of the automobile unrelated to that involved in this case resulting from her involvement in a minor collision. That damage was present at the time trial witnesses inspected the vehicle, and it is not seriously contended that the damages the vehicle suffered in Mrs. Smith's minor collision were related in any way to those underlying the misrepresentation. Therefore, the plaintiff produced evidence that the vehicle was undamaged at the time it was delivered to Moore Ford, and that it was not damaged in the area of controversy during Mrs. Smith's ownership. It was left for the jury to infer from those basic elemental facts that the car was damaged while in the posssesion of Moore Ford prior to sale. It should also be pointed out that a representative of Moore Ford testified that on occasions customers unknowingly purchased vehicles which have been damaged in some degree, either in transit or while on the lot. Moore Ford's policy is that it will exercise its

own discretion, on a case by case basis, in notifying a customer of prior damage to a vehicle he is purchasing as new. Finally, there was evidence presented that experienced automobile retail salesmen are trained to identify automobiles which have been damaged and repaired. We hold that there was sufficient evidence to present a jury question whether Moore Ford knew or should have known that the vehicle had been damaged prior to its sale to Mrs. Smith.

Regarding the issue of substantial evidence to support the jury verdict of $1,250, Charles Brush, Jr., an expert witness with knowledge of the business of buying, repairing and selling wrecked automobiles, testified that the value of the vehicle at the time of purchase was reduced $1,000 to $1,-500 because of the damages alleged to have occurred prior to the time of purchase. Mrs. Smith testified that in her opinion the vehicle she paid $4,624 for was actually worth only $2,300 at the time of purchase because of the repaired damage. An owner of property may testify as to its value. *Garrett* v. *Trimune*, 254 Ark. 79, 491 S.W. 2d 586 (1973). We hold that there was sufficient evidence as to damages to present a jury question and to support the jury's verdict of $1,250.

## V.

By objection to a jury instruction of punitive damages and by allegation that the court erred in refusing to grant the appellant's motion for directed verdict on the issue of punitive damages, the appellant raises the question of both the award of punitive damages and the amount of the award.

We agree that punitive damages are appropriate in this case. Once the jury made its award of compensatory damages and, therefore, determined by general verdict that the alleged misrepresentation did in fact occur, all of the criteria this court enunciated in *Ray Dodge* were met. That case involved the deliberate setting back of the odometer of a used car prior to sale, and we recognized that the far-reaching consequences of that type of commercial fraud required punishment as a deterrent, and that if there was evidence tending to show that the tortfeasor intentionally performed a deliberate act with the intention of misleading a prospective purchaser about a

material matter to his injury, it was proper to permit the jury to consider the award of exemplary damages.

Appellant argues that this case is closer to *Satterfield* v. *Rebsamen Ford, Inc.*, 253 Ark. 181, 485 S.W. 2d 192 (1972), a contention with which we disagree. In *Satterfield* the used car sold to the plaintiff had been damaged and repaired by its prior owner before Rebsamen Ford had possession of the car, and there was little or no evidence tending to show that Rebsamen Ford had knowledge of the prior damage.

Alternatively, appellant requests of the court a reduction in the amount of punitive damages, $15,000, contending that the amount bears no reasonable relationship to the amount of compensatory damages, $1,250. Justice George Rose Smith, Justice Mays, and the writer would affirm the $15,000 judgment for the following reasons: It is impossible to create purely objective standards to determine the reasonableness of jury awarded punitive damage amounts. However, we found in *Ray Dodge* that the punitive damage award of $5,000, compared to $350 compensatory damages, was not so great as to shock the conscience of the court or to indicate passion and prejudice on the part of the jury. Furthermore, in *Ray Dodge*, we specifically avoided declaring that our law required a reasonable relationship between compensatory and exemplary damages. The amount of punitive damages awarded in this case is justified because this is a commercial fraud, and the deterrent effect of a substantial punitive award on others inclined to engage in the same practices is of importance. A Moore Ford manager testified that sometimes customers were informed of damage to a new car and sometimes they were not, depending on the nature and extent of the repaired damage. Appellant has the right to exercise that discretion, and in a case involving a new car which has suffered a minor lot dent having no effect whatsoever on the value of the car, it is clear that appellant would be justified in withholding that information from the purchaser. However, it should be made known to appellant and others finding themselves in similar positions as vendors that they exercise that discretion at their own risk. The most direct way that can be accomplished in our system of justice is by permitting a jury, in the ap-

propriate circumstances, to award exemplary damages, and this is such an appropriate case.

Justice Purtle would reduce the award of punitive damage from $15,000 to $5,000. Since a majority of four is required for a decision, the judgment will therefore be modified by reducing the award of punitive damages to $5,-000.

Affirmed as modified.

The Chief Justice, Justice Stroud and Special Justice Charles Roscopf dissent as to the allowance of punitive damages.

Holt and Hickman, JJ., disqualified and not participating.