Sidney FREEMAN *v.* R. George KING, et al

CA 83-92                                                         662 S.W.2d 479

Court of Appeals of Arkansas
Division II
Opinion delivered January 11, 1984

*Hardin, Jesson & Dawson,* for appellant.

*Pryor, Robinson & Barry,* by: *Thomas B. Pryor,* for appellees.

MELVIN MAYFIELD, Chief Judge. The appellant, Sidney Freeman, appeals from the granting of appellees' motion for summary judgment.

The appellees are George King and various corporations used by him to operate an industrial laundry business in the Fort Smith area. In 1967 Freeman was employed to manage this business under an agreement which provided for a salary and profit-sharing arrangement. In December of 1981, Freeman resigned because he believed he was not receiving the agreed share of profits, and in February of 1982, he filed this suit seeking an accounting and judgment for the profits he contends are due him.

Answers were filed for the appellees and after the depositions of Freeman and King had been taken the appellees filed a motion for summary judgment. The motion was submitted upon the pleadings and depositions, from which the court found "the following material facts to be undisputed."

1. There was an oral employment contract.

2. An unsigned memorandum of some of the terms of the employment agreement was prepared.

3. The oral agreement was modified numerous times over the 14 years it was in effect.

4. Approximately ten years ago King stopped showing Freeman the books despite Freeman's requests to see them.

5. For six to ten years Freeman suspected King was not paying his bonus in accordance with the agreement.

6. For the past six to ten years Freeman did not controvert King's unilateral right to determine such bonus as King deemed reasonable without accounting to Freeman for the method by which such bonus was computed.

7. During the past decade King and Freeman agreed upon various increased benefits to Freeman's advantage in addition to those provided in the August 21, 1967 document, including a substantially increased salary — the most recent salary increase, $1,200.00 per week or $62,400.00 per year, being four times the maximum provided in the agreement regardless of the amount of the profits.

Next, the court's judgment states "there being no genuine issue as to the above material facts, the court finds that the defendants are entitled to judgment as a matter of law." The court's reasoning is then set out as follows:

Freeman with knowledge (constructive if not actual) that King was not strictly complying with the bonus formula, and while acquiescing in modifications of the original agreement substantially to his advantage, remained silent and failed to assert any right he might have had to an accounting based upon the August 21, 1967 document for a period of at least six and perhaps as many as ten years. The voluntary relinquishment of rights by Freeman (waiver), the detrimental reliance by King (estoppel), and the unreasonable delay in the enforcement of any right Freeman might have had to demand an accounting or to enforce the other rights claimed herein (laches) entitle the defendants, and all of them, to judgment as a matter of law.

Motions for summary judgment are governed by some well-established principles of law. In *Walker* v. *Stephens*, 3 Ark. App. 205, 626 S.W.2d 200 (1981), we said:

On such motions the moving party has the burden of demonstrating that there is no genuine issue of fact for trial and any evidence submitted in support of the motion must be viewed most favorably to the party against whom the relief is sought. Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable men might differ. *Hendricks* v. *Burton*, 1 Ark. App. 159, 613 S.W.2d 609 (1981); *Dodrill* v. *Arkansas Democrat Co.*, 265 Ark. 628, 590 S.W.2d 840 (1979); *Braswell* v. *Gehl*, 263 Ark. 706, 567 S.W.2d 113 (1978). The object of summary judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever the motion should be denied. *Trace X Chemical, Inc.* v. *Highland Resources, Inc.*, 265 Ark. 468, 579 S.W.2d 89 (1979); *Ashley* v. *Eisele*, 247 Ark. 281, 445 S.W.2d 76 (1969). A motion for summary judgment cannot be used to submit a disputed question of fact to a trial judge. *Griffin* v. *Monsanto Co.*, 240 Ark. 420, 400 S.W.2d 492 (1966).

The parties do not really disagree as to what the real issue is in this appeal. The appellant says regardless of whether the facts listed in the trial court's judgment are disputed, reasonable minds could differ as to the inferences to be drawn from those facts and summary judgment was therefore inappropriate. On the other hand, the appellees say that reasonable minds could *not* differ and it would be a fruitless exercise to spend two or three days trying the case. It is our view that summary judgment should not have been granted and we reverse and remand the case for further proceedings.

The first ground upon which the court based its decision is waiver. That term was defined in the case of *Ray Dodge, Inc.* v. *Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972), as follows:

Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist,

with the intent that he shall forever be deprived of its benefits. It may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it.

Freeman's testimony was that in the early years of their agreement he was shown financial statements and had no reason to question the amount of profits which he shared. Later, however, he suspected his share should have been more, but when he asked to see the information upon which it was calculated he was told the books were at the accountant's and a financial statement was not available. He said he asked for this information several times through the years and received the same response. He testified that in 1979 he was told his share of the profits for 1978 was about $20,000.00 although during the summer of 1977 he had been told by King that within two years he would be making $100,000.00, and although he knew 1978 had been an extremely profitable year.

At about the same time King opened a quarter horse ranch in which he began to invest large sums of money. So, in August of 1979, when Freeman tried to find out what the profits were for 1978, and was again told that the books were at the accountant's, he became convinced he was being cheated. He said he actually prepared a resignation dated August 29, 1979, but did not turn it in and worked on until the end of 1981, at which time he did resign.

The appellees point to this evidence and say because for several years Freeman accepted the profit share as fixed by King even though he did not believe it was for the correct amount, and also accepted increases in both salary and expense allowances, it must be said that he waived any right to insist upon a strict compliance with the 1967 profit sharing arrangement. We do not agree.

First, we note that the trial court's finding No. 7, explicitly states that Freeman's increased benefits were *in addition* to those provided in the 1967 agreement. Certainly his salary and other benefits *could* be increased without a waiver of his profit-sharing agreement, and

apparently the court found this *did* occur. Also, the receipt of a portion of what is due does not necessarily mean that there is a waiver of the additional amount due. In most cases the question of waiver is one of fact, *Moore Ford Co.* v. *Smith,* 270 Ark. 340, 604 S.W.2d 943 (1980), and we think it is a question of fact in this case — especially since the evidence in support of a motion for summary judgment must be viewed most favorably to the opposing party, and if there is any doubt, the motion must be denied. *Walker* v. *Stephens, supra.*

The trial court's second ground for granting summary judgment is estoppel. Again, we do not believe that reasonable minds could find only one way. In *Bethell* v. *Bethell,* 268 Ark. 409, 424, 597 S.W. 2d 576 (1980), the court stated the rule with respect to estoppel as follows:

> A party who by his acts, declarations or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled.

It is not clear that Freeman induced or misled King to do something he would not have otherwise done. King argues that if Freeman had not silently accepted the increased salary and expense benefits but had said he was going to insist also upon strict compliance with the 1967 agreement, he could have been fired or, we suppose, the increases in salary and expenses could have been less or even not granted in any amount. The problem is, King did not testify to that effect and we have to engage in speculation to accept that scenario. And if we speculate, it might be that Freeman's expressed intention would have changed nothing, or that his profit share would have been correctly determined from that date forward in keeping with the agreement. After all, King admitted that Freeman was a good manager, that the volume of business went from $7,500.00 to $38,000.00 per week while he was there, and that

King had used the 1967 agreement as a guideline only, and actually paid whatever "bonus" he thought should be paid. Appellees argue that Freeman said King would have fired him, but this is still speculation and when considered with all the evidence, is not enough for us to hold that reasonable men could draw only one inference therefrom.

Additionally, *Bethell* says "the whole principle of equitable estoppel" is based upon a man's deliberately doing an act or saying a thing, and another, *who has a right to do so,* relying upon that act or word. 268 Ark. at 424. Considering all the evidence in this case, not only is there a genuine issue of fact as to whether King relied upon Freeman's conduct, but we see no way to hold that reasonable men *must* conclude that King *had a right* to rely upon Freeman's acceptance of the increases in salary and expenses as meaning that he would not insist upon his share of the profits as provided for in the 1967 agreement.

Neither can we find estoppel as a matter of law in the fact that Freeman accepted the "bonus" paid him each year without voicing an objection as to its amount. In addition to the reasons already given, we think reasonable men could find that Freeman's silent acceptance of the "bonus," salary, and expenses did not induce King to change his position for the worse in such manner that it would operate as a "virtual fraud" upon King to allow Freeman to assert the right to recover in this case. See, *Lee* v. *Doe,* 274 Ark. 467, 472, 626 S.W.2d 353 (1981).

The third ground used as a basis for the trial court's decision is laches, which the court found resulted from "the unreasonable delay in the enforcement of any right Freeman might have had to demand an accounting or to enforce the other rights claimed herein."

It is quite apparent that what constitutes unreasonable delay would ordinarily involve questions of fact. The first question here is the date from which we start our measurement. The appellees contend that we should start from the date Freeman had constructive knowledge of the facts entitling him to bring suit, and they cite *Schultz & Watkins*

v. *Rector-Phillips-Morse,* 261 Ark. 769, 552 S.W.2d 4 (1977), in support of that contention. They then argue that Freeman had this constructive knowledge around 1970-71, when King ceased letting him see the financial records, or around 1972 to 1974 which was when Freeman said he first suspected he was not being paid his proper share of the profits. Freeman contends, however, that we should start with the summer of 1979 when he was told that his share of the profits for 1978 was only about $20,000.00 and when he became convinced he was being cheated and when he actually prepared a resignation but did not turn it in.

We think these contentions show that whether there was an unreasonable delay presented a genuine issue of fact upon which reasonable minds could differ, and that summary judgment was not the proper procedure for its resolution.

Moreover, if the summer of 1979 is used, this suit was filed within the three-year statute of limitations applicable to oral contracts, Ark. Stat. Ann. § 37-206 (Repl. 1962). Therefore, this claim would not be barred unless there is evidence from which it could be found that three years is an unreasonable period of time. See, *Moore* v. *City of Blytheville,* 1 Ark. App. 35, 41, 612 S.W.2d 327 (1981). In that event, there is a question of fact; and if we start with some point prior to the summer of 1979, there is still a question of fact as to whether Freeman unreasonably delayed a direct confrontation and whether this caused King to change his position to his detriment so that it would be inequitable to allow Freeman to bring this suit. See, *Padgett* v. *Bank of Eureka Springs,* 279 Ark. 367, 372, 651 S.W.2d 460 (1983).

We have tried only to explain our rationale for holding that this case presented factual issues that should not have been decided on motion for summary judgment. While chancery appeals are before us for trial de novo, we do not make any factual determination in this case, but exercise our discretionary power to remand for further proceedings. See, *Ferguson* v. *Green,* 266 Ark. 556, 587 S.W.2d 18 (1979).

Reversed and remanded.

COOPER and GLAZE, JJ., agree.