James HARVISON and Maidlene Harvison *v.* CHARLES E. DAVIS AND ASSOCIATES, INC., a/k/a Davis & Associates, P.A., Charles E. Davis and Jeff H. Watson

91-286                                              835 S.W.2d 284

Supreme Court of Arkansas
Opinion delivered June 29, 1992

*Arens Law Firm*, by: *Gregory R. Bowman*, for appellants.

*Davis, Cox & Wright*, by: *Walter B. Cox* and *Tim E. Howell*, for appellees.

DONALD L. CORBIN, Justice. Appellants, James and Maidlene Harvison, appeal an order of the Washington Circuit Court entering summary judgment and dismissing their complaint for conversion, fraud, and legal malpractice against appellees, Charles E. Davis and Associates, Inc., a/k/a Davis & Associates, P.A., Charles E. Davis, and Jeff H. Watson. The Harvisons allege their causes of action arose from Davis' and Watson's representation of the Harvisons in the drafting and enforcement of a land sales contract. The Harvisons assert six points of error in the proceedings below, all of which concern their claim for legal malpractice. We find no error and affirm.

The Harvisons' complaint alleged Davis and Watson committed malpractice by obtaining a foreclosure of their land rather than following their instructions to repossess the land for them. Davis and Watson moved for summary judgment on the grounds that they attempted to achieve a forfeiture, but forfeiture was not an available remedy to the Harvisons. The trial court entered an order concluding there was no genuine issue of material fact and that Davis and Watson were entitled to judgment as a matter of law.

We address the Harvisons' first, second, and fourth assignments of error together as they are essentially the same

argument — that the trial court erred in granting summary judgment because Davis and Watson did not meet their burden of showing an absence of a genuine issue of material fact or that they were entitled to judgment as a matter of law. On appellate review, we need only to decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Nixon* v. *H & C Elec. Co.*, 307 Ark. 154, 818 S.W.2d 251 (1991). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Cordes* v. *Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). All proof submitted must be viewed in a light most favorable to the party resisting the motion and any doubts and inferences must be resolved against the moving party. *Reagan* v. *City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991).

With the foregoing standards in mind, we recite the evidence in the light most favorable to the Harvisons. For a purchase price of $55,000,00, with $10,000.00 down and remainder financed at an interest rate of 10% per annum, the Harvisons sold approximately 10.76 acres in Washington County to Charles R. and Vera Howard. The contract was dated June 4, 1982, and directed the Howards to make monthly payments of $594.68 to the escrow agent, First State Bank, Springdale, Arkansas, beginning on July 5, 1982. The contract contained a forfeiture clause, providing that in the event of the buyers' default for as long as thirty days, the sellers were entitled to declare the entire unpaid balance due within twenty days; if the balance remained unpaid at the expiration of the twenty days, the sellers were entitled to retake possession of the land without legal process and to keep all payments made under the contract as liquidated damages. The contract further provided that in the event of the buyers' default, the sellers were entitled to waive their forfeiture rights and seek specific performance of the contract.

The Harvisons hired Davis to draft the contract in question. They also hired Davis to handle the collection of the Howards' default on two occasions, once in 1984 or 1985 and again in 1986. On both occasions, Davis advised the Harvisons of their right to enforce the forfeiture clause. On both occasions, the Harvisons chose not to seek a forfeiture. Instead, they chose to accept the Howards' late payments and to proceed under the contract. The

Howards defaulted again in January 1989. And again, the Harvisons consulted Davis for advice on handling the default. Davis assigned the matter to his associate Watson.

The Harvisons consulted Watson concerning the latest default and informed Watson they wanted to retake possession of the land. As required by the contract, on February 23, 1989, Watson drafted a letter of notice to the Howards notifying them of their default and demanding that the entire balance be paid in twenty days.

By letter dated March 22, 1989, Watson informed the Harvisons that the Howards desired to make up all the back payments and make one payment in advance. The Harvisons instructed Watson that they did not want to accept the Howards' payments, rather they wanted to enforce the forfeiture clause of the contract. On April 10, 1989, Watson filed a complaint on the Harvisons' behalf in Washington Chancery Court seeking first a forfeiture of the lands sold under the contract, and in the alternative, a judgment lien and foreclosure. On October 12, 1989, the chancellor entered an order stating that the Howards had acquired an equitable interest in the property and that because equity abhors a forfeiture, a sale of the property to a third party for $115,000.00 was approved. The order distributed the proceeds from the sale so that the Harvisons received the balance due them under the contract of $24,801.48, including principal, interest, costs, and attorneys' fees. In addition, the proceeds were distributed so that federal income tax liens totaling $72,594.75 against the Howards' interest and a judgment lien for workers compensation benefits of $5,412.85 against the Howards' interest were satisfied.

In their motion for summary judgment, Davis and Watson argued that they were not negligent in seeking the foreclosure as an alternative remedy to forfeiture because forfeiture was not an available remedy to the Harvisons. The Harvisons opposed the motion arguing, as they argue on appeal, that if forfeiture was not a remedy available to them it was not because of their own actions but because of Davis' and Watson's negligence in drafting or enforcing the contract. Specifically, the Harvisons claim that a forfeiture clause in a land sales contract is enforceable unless the seller acts so as to waive the right to forfeiture and that appellees

did not produce evidence that waiver exists in this case.

■ Davis and Watson clearly met their burden of sustaining the summary judgment. The foregoing evidence was recited from facts which were not disputed by either party. Those material facts reveal that forfeiture was not a remedy available to the Harvisons for a number of reasons. First, the Howards had made payments under the contract for almost seven years amounting to approximately 60% of the purchase price. The Harvisons always accepted these payments, whether timely or untimely. As a result, by the time suit was filed for the 1989 default, the Howards had acquired an equitable interest in the property. Principles of equity abhor a forfeiture of the Howards' equitable interest under these circumstances, even when the contract expressly provides for the right of forfeiture. *Humke* v. *Taylor*, 282 Ark. 94, 666 S.W.2d 394 (1984); *Triplett* v. *Davis*, 238 Ark. 870, 385 S.W.2d 33 (1964). Second, there were two interests other than those of the Harvisons' and the Howards' for the equity court to consider. The Internal Revenue Service had an interest based on federal income tax liens of $72,594.75. In addition, Ron McCann had a judgment lien of $5,412.85 for unpaid workers compensation benefits. Third, the value of the property in question had appreciated substantially from $55,000.00 on the date of the contract to $115,000.00 at the time of the 1989 default and the subsequent suit on the contract. The combination of these three factors tipped the scales of equity in favor of the foreclosure sale.

The Harvisons place too great an emphasis on the issue of waiver. We do not ignore, however, their argument that Davis and Watson never informed them that their conduct in accepting late payments would amount to a waiver of their right to forfeiture. Whether or not such a failure was a breach of Davis' and Watson's duty, it did not cause the Harvisons any damages because the trial court's approval of the sale and denial of forfeiture was not based entirely on the Harvisons' conduct in accepting late payments. There were other factors involved, the most significant factor being the liens against the property. The chancellor considered these liens at the hearing on the motion. From the bench he stated his ruling as follows:

Gentlemen, I think all of you are in agreement that

> forfeiture clauses are proper, and it's strictly up to the Court. And, of course, equity abhors a forfeiture, an old maxim that sometimes, or often called by chancellors when the occasion arises. In this particular case, with this lien, judgment lien, IRS lien, against the property, I don't think any Judge in the State of Arkansas would allow a forfeiture under those particular circumstances. I see no genuine issue of material fact, and I'm granting the defendant summary judgment.

Thus, even in the absence of waiver, forfeiture would not have been a remedy available to the Harvisons.

For the Harvisons to assert that principles of equity should have awarded them repossession of the land now valued at $115,000.00 and allowed them to keep the $30,000.00 paid by the Howards under the contract, while simultaneously ignoring the interests of the Howards, the Internal Revenue Service, and Ron McCann, is to assert that they should have been awarded a windfall at the complete expense of the other interests in the property. Principles of equity would never award such a windfall, especially when presented with an opportunity to completely satisfy all interests in the property.

■ Davis and Watson met their burden of establishing a lack of a genuine issue of material fact and entitlement to judgment as a matter of law. The Harvisons did not meet this proof that a genuine issue of material fact exists. *Dillard* v. *Resolution Trust Corp.*, 308 Ark. 357, 824 S.W.2d 387 (1992). Therefore, we cannot say the trial court erred in granting summary judgment.

As another point for reversal, the Harvisons claim it was malpractice per se for Davis and Watson to not follow their instructions to retake the property and to end the contract. The Harvisons cite us to the Model Rules of Professional Conduct as authority that Davis and Watson committed malpractice by not abiding by their clients' objectives of representation, Rule 1.2(a), and by not consulting with their clients, Rule 1.2(e), or explaining the matter to them, Rule 1.4(b). They also argue Davis and Watson violated Rule 1.4(a) by failing to keep them informed of the status of the case.

This argument, as phrased in the Harvisons' brief, is based on the false premise that Davis and Watson did not follow their instructions to retake the property and end the contract. Our review of the record reveals that Davis and Watson followed the Harvisons' instructions precisely.

The Harvisons argue that instead of initiating steps to retake the property, Watson wrote a demand letter to the Howards and when the demand letter went unanswered, filed a foreclosure action in equity. This is simply not what occurred. It is true that Watson wrote a demand letter to the Howards before taking steps to repossess the property, however, such a demand was required by the terms of the contract, as well as principles of equity. The demand letter was the first step required in the attempt to seek a forfeiture. It is also true that when the demand went unanswered, Watson filed a complaint for foreclosure; however, that same complaint first requested a forfeiture. A foreclosure was requested only as an alternative to forfeiture.

Davis and Watson followed the Harvisons' instructions to retake the property and end the contract. A complaint for forfeiture was filed and rejected by the trial court, which instead approved a foreclosure sale. The Harvisons received the balance due them under the contract in addition to attorneys' fees and costs. The contract was ended. We are unwilling to say that because Davis and Watson attempted to but did not achieve the particular result the Harvisons requested, they committed malpractice per se.

As yet another point for reversal, the Harvisons claim the chancellor's affidavit was immaterial and the trial court's failure to strike it from the record was reversible error. The chancellor who denied the Harvisons' request for forfeiture and approved the sale, Judge John Lineberger, did state in an affidavit filed in support of the motion for summary judgment that he "would not permit forfeiture under the facts of the case." However, nowhere in the record is it revealed that the Harvisons asked the trial court to strike the chancellor's affidavit from the record before it. By now it should be obvious that we do not address arguments raised for the first time on appeal. *Shamlin* v. *Shuffield*, 302 Ark. 164, 787 S.W.2d 687 (1990).

As their final point for reversal, the Harvisons assert they

should have been allowed to engage in discovery to gather the necessary information to rebut the facts asserted in the chancellor's affidavit. The Harvisons rely on ARCP Rule 56(f).

■■ The continuance granted by Rule 56(f) is a matter within the trial court's discretion and a refusal to grant such a continuance will not be reversed absent an abuse of that discretion. *Pinkston* v. *Lovell*, 296 Ark. 543, 759 S.W.2d 20 (1988). The affidavit in question was merely the chancellor's statement that under the circumstances of the particular case, he would not have granted a forfeiture. His affidavit did not place any material facts in genuine dispute. Therefore, the trial court did not abuse its discretion in denying the Harvisons' request to engage in discovery and in entering summary judgment.

■ In their reply brief, the Harvisons ask us to strike the supplemental abstract in Davis' and Watson's brief because it fails to comply with Ark. Sup. Ct. R. 9 in that it is a verbatim reproduction of the record, not written in the first person, and contains matters that are not necessary to an understanding of the questions presented. Appellees' supplemental abstract does contain verbatim reproductions of some paragraphs of some of the pleadings. However, the nine-page supplemental abstract is nowhere near the equivalent of an extensive verbatim reproduction of the entire 308-page transcript. *See Widmer* v. *Taylor*, 296 Ark. 337, 756 S.W.2d 903 (1988). There is no testimony included in the supplemental abstract, therefore there is no need for the abstract to be written in the first person. *See* Rule 9(d). There is nothing in the supplemental abstract that is not necessary to an understanding of the questions presented. The Harvisons' request to strike the supplemental abstract is denied.

Affirmed.

HAYS and BROWN, JJ., dissent.

NEWBERN, J., not participating.

ROBERT L. BROWN, Justice, dissenting. I cannot agree with the majority that it was undisputed that forfeiture was unavailable to the parties. On the contrary, the Harvisons submitted an affidavit from an attorney, Randy Coleman, which stated that forfeiture was an available remedy under the facts of this case. That affidavit clearly qualifies as proof for the Harvisons' position

and just as clearly establishes a material issue of fact regarding any underlying facts that might prohibit forfeiture.

In this case there were two such underlying factual issues. The first was whether the Harvisons had waived their right to forfeiture due to an habitual receipt of late contract payments. (According to the Howards, there were eight late payments over seven years.) The second was whether liens against the Howards totalling $78,000 which attached to the Howards' equitable interest in the land somehow prohibited forfeiture. The trial judge premised his decision on the lien issue and found that the liens were decisive in preventing forfeiture. Why this is so was not stated by the court.

The Coleman affidavit in support of the forfeiture remedy places these underlying factual matters in dispute. Whether the Harvisons implicitly waived their right to forfeiture is clearly a question of fact that should have been resolved at trial. *See, e.g., Moore Ford Co.* v. *Smith,* 270 Ark. 340, 640 S.W.2d 943 (1980); *Freeman* v. *King,* 10 Ark. App. 220, 662 S.W.2d 479 (1984). The issue of the liens is more troublesome. Assuming that the liens did attach to the land, the land could still have been forfeited to the Harvisons and the liens subsequently satisfied by them. This would have left title in the Harvisons, who stood to gain more than the balance of the contract price due to appreciation in the land's value.

There is, too, the issue of whether the appellees communicated with their clients. The majority's conclusion that this is irrelevant since the Harvisons got everything that they wanted simply does not hold water. The Harvisons made it very clear in their affidavit that they wanted the land back. What they got was the balance of the contract price — about $21,000 plus costs and fees. But with forfeiture, they could have retained title and benefitted from the land's appreciation in value (from $55,000 to $115,000 in seven years) and the potential for greater appreciation in the future.

The appellees admit that they did not communicate the circuit court's decision denying forfeiture and approving the sale to the third party to their clients. By the time that the Harvisons were made aware of it, the land had been sold. Even if you accept the trial judge's conclusion that the forfeiture was not an

available remedy, the Harvisons still had the right to retain the land and refuse a foreclosure sale. That right was denied them because of lack of communication from the appellees. The trial judge, however, granted summary judgment without making a finding on this pivotal point.

It may well be that, following trial, forfeiture would ultimately be unavailable in this case. But when critical issues of fact remain to be resolved, as was clearly the situation in this case, summary justice is inappropriate. I would reverse for a trial on the merits.

HAYS, J., joins.