Doyle REYNOLDS and Alma Lou Reynolds *v.*
SHELTER MUTUAL INSURANCE COMPANY and
Wayne Scoggins

92-1266                                          852 S.W.2d 799

Supreme Court of Arkansas
Opinion delivered May 10, 1993

*Jones, Hixon & Jones*, by: *Holly Smith* and *Lewis D. Jones*, for appellants.

*Roy & Lambert*, by: *James M. Roy, Jr.*, for appellee Shelter Mutual Insurance and *Stephen M. Schwartz*, for appellee Wayne Scoggins.

DONALD L. CORBIN, Justice. This appeal originated as a suit by the insureds against their insurer. Appellants, Doyle and Alma Lou Reynolds, purchased farmerowners insurance for their poultry farm from appellee Wayne Scoggins, who is an agent for appellee Shelter Mutual Insurance Company. A severe winter storm caused damage to four structures and their contents on appellants' farm. Appellants reported the damages to Shelter and Shelter refused to pay the claim stating that appellants' policy did not include "collapse coverage" or coverage for damages caused by the weight of ice or snow. Appellants sued Shelter and Scoggins alleging, inter alia, bad faith, breach of contract, negligence, and misrepresentation. The trial court entered partial summary judgment on the claim for bad faith and punitive damages. The trial court directed a verdict for appellee Scoggins on the claim for misrepresentation. A jury rendered verdicts in favor of Shelter and Scoggins on the other claims. Appellants appeal both the granting of partial summary judgment and the judgment entered pursuant to the jury's verdicts. We have jurisdiction of the appeal as it involves questions in the law of torts. Ark. Sup. Ct. R. 1-2(a)(16) (*In Re Rules of the Arkansas Supreme Court and the Arkansas Court of Appeals*, 311 Ark. App'x (Feb. 1, 1993)). Appellants assert four arguments for

reversal of the judgments appealed. We find no merit to the arguments and therefore affirm.

First, appellants claim the trial court erred in granting partial summary judgment on the claim for bad faith. They claim the record before the trial court showed there were genuine issues of material fact as to whether Shelter engaged in conduct sufficient to support a claim for bad faith.

On appellate review, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Harvison* v. *Charles E. Davis & Assoc.*, 310 Ark. 104, 835 S.W.2d 284 (1992). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Id.* However, once the movant makes a prima facie showing of entitlement to summary judgment, the respondent must meet that proof with proof that a genuine issue of material fact exists. *Bushong* v. *Garman Co.*, 311 Ark. 228, 843 S.W.2d 807 (1992). All proof submitted must be viewed in a light most favorable to the party resisting the motion and any doubts and inferences must be resolved against the moving party. *Harvison*, 310 Ark. 104, 835 S.W.2d 284.

The tort of bad faith is an extension of the well-established rule by which an insurance company may be held liable for its failure to settle a claim within policy limits. *Members Mut. Ins. Co.* v. *Blissett*, 254 Ark. 211, 492 S.W.2d 429 (1973). The tort of bad faith requires affirmative misconduct, without a good faith defense; the affirmative misconduct must be dishonest, malicious, or oppressive in an attempt to avoid the insurer's liability under an insurance policy. *Findley* v. *Time Ins. Co.*, 264 Ark. 647, 753 S.W.2d 908 (1978). The mere failure to investigate a claim is not the sort of affirmative misconduct that gives rise to a cause of action in tort for bad faith. *Id.* In granting Shelter's motion for summary judgment, the trial court observed that the only argument appellants made concerning bad faith was Shelter's failure to adequately investigate their claim. The trial court concluded that such conduct did not give rise to a cause of action for bad faith according to *Findley*. We agree with this finding.

Appellants did respond to the motion for summary

judgment with affidavits and depositions. However, none of the evidentiary items presented to the trial court — pleadings, depositions, answers to interrogatories, and affidavits — indicate that Shelter engaged in affirmative conduct that was malicious, dishonest, or oppressive in order to avoid paying appellants' claim. Even in resolving all inferences to be drawn from the evidence in favor of appellants, the evidence shows nothing other than Shelter delayed investigating appellants' claim for three months because the claim was initially reported as being caused by something for which appellants did not have coverage — the collapse of a roof due to the weight of accumulated ice and snow. It was only after appellants' attorney wrote a letter to Shelter requesting an investigation and suggesting that the damage could have been caused by something other than the weight of ice and snow that Shelter investigated the claim. We agree with the trial court that such conduct in waiting to investigate a claim is not the sort of malicious affirmative misconduct that gives rise to a cause of action in tort for bad faith. Despite appellants' claim that Shelter acted with bad faith or ill will, there is simply no evidence of any such ill will on Shelter's part. Without any evidence of malice or ill will on the part of the insurer, the failure to investigate a claim resulting from a reasonable belief that the damages reported are not covered under the policy does not amount to the tort of bad faith. *See Findley*, 264 Ark. 647, 753 S.W.2d 908.

Shelter met its burden of establishing a lack of a genuine issue of material fact and entitlement to judgment as a matter of law. Appellants did not meet this proof with proof that a genuine issue of material fact exists as to the claim for bad faith. Appellants simply failed to offer any proof that appellants acted maliciously, dishonestly, or oppressively. Therefore, we cannot say the trial court erred in granting summary judgment.

We reject appellants' argument that the rule requiring affirmative misconduct to support a claim for bad faith encourages inaction on the part or insurers. To the contrary, the rule as stated in *Findley*, provides yet another remedy in tort for an insured who feels his claim has not been adequately investigated by his insurer. Although an insurer's actions, or inaction as the case may be, may not amount to a claim for bad faith, those same actions or inactions may support a claim in contract for non-

performance (breach of contract) or a claim in tort for defective performance (negligence). *See Findley*, 264 Ark. 647, 753 S.W.2d 908.

Second, appellants claim the trial court erred in ruling the insurance policy was not ambiguous. On appeal, appellants argue the policy's provision for loss due to windstorm is ambiguous in two respects, and therefore should be construed strictly against the insurer. The part of the policy in question states as follows:

PERILS WE INSURE AGAINST — SECTION 1

. . . .

We cover direct loss to property insured under Coverage C, Farm Personal Property and Farm Structures caused by perils 1 thru 11 unless the loss is excluded elsewhere under this policy:

1. Fire or Lightning.

2. Windstorm or Hail.

This does not include loss:

> (a) property in a building, caused by rain, snow, sand, sleet or dust unless the building is first damaged by the direct force of wind or hail, creating an opening through which the rain, snow, sand, sleet or dust enters[.]

On appeal, appellants claim the foregoing windstorm provision of the policy is ambiguous because it is not clear as to coverage when wind, snow, and hail combine to create a loss and because the exclusionary clause refers only to "property *in* a building." (Emphasis added.)

We do not address the merits of this argument because it is not preserved for our review. Although appellants did raise a general objection to the ambiguity of the windstorm and hail provision to the trial court, they did not raise it in either of the two specific ways argued in this court. At trial, appellants claimed that if Shelter intended to exclude from coverage damages that are clearly included under the windstorm and hail provision, it was required to express that exclusion in clear and unmistakable language. The trial court agreed that if there was an ambiguity,

the policy should be construed against Shelter as the party who drafted the policy, and asked appellants exactly what language they thought was ambiguous. Appellants did not respond with a specific answer to the trial court's question. Instead, they merely reiterated their claim that the language "windstorm and hail" would commonly mean to anyone that his property would be covered in a storm and that Shelter could have easily excluded collapse coverage just as easily as it had excluded other things.

█ The foregoing is the only objection raised below with respect to the ambiguity of the windstorm and hail provision of the policy. Appellants' objection was simply not specific enough to apprise the trial court of the particular ambiguities they challenge on appeal. The abstract mentions nothing about an objection to the "property in a building" language or an objection about the effect of combined snow, sleet, and hail. Objections below must be specific enough to apprise the trial court of the particular error in question. *Acme Brick Co.* v. *Missouri Pac. R.R.*, 307 Ark. 363, 821 S.W.2d 7 (1991). Moreover, we will not consider an issue when the appellant changes grounds for an argument on appeal. *Warhurst* v. *White*, 310 Ark. 546, 838 S.W.2d 350 (1992).

As their third argument for reversal, appellants challenge a jury instruction given by the trial court. Appellants claim the instruction was erroneous in three respects. The challenged instruction is Instruction No. 9 and was given as follows:

> Doyle and Alma Lou Reynolds claim damages from Shelter Mutual Insurance Company and have the burden of proving by a preponderance of the evidence three essential propositions:
>
> First, that the structures and equipment were listed on the declaration sheet of the insurance policy.
>
> Second, that the structures and equipment were damaged by a windstorm or hail.
>
> And third, the amount of damages that they have sustained.
>
> While the policy contains no definition of windstorm, you are instructed that under the law, a windstorm is

defined as a wind which is of sufficient violence to be capable of damaging the insured property by its own unaided action provided that the property was in a reasonable state of repair at the time of the windstorm.

Therefore, if you find that a windstorm or hail was the dominant, direct and efficient cause of the loss and damage to the plaintiff's structures and equipment insured, then your verdict will be for the plaintiffs against Shelter Mutual Insurance Company; but if on the other hand you find that any of these propositions has not been proved, then your verdict should be for Shelter Mutual Insurance Company.

Appellants' first challenge to Instruction No. 9 is that it erroneously placed the burden of proof on them. Relying on *Lynch* v. *Traveler's Indemnity Co.*, 452 F.2d 1065 (8th Cir. 1972), and *Arkansas Farm Bureau Ins. Fed'n* v. *Ryman*, 309 Ark. 283, 831 S.W.2d 133 (1992), appellants claim Shelter was relying on an exclusionary provision of the contract and therefore had the burden of proving appellants' damages fell within the exclusion.

It is true that if an insurer claims damages are excluded under its policy, it has the burden of so proving; however, this burden is not placed on an insurer until the insured has first made a prima facie case that the damages are covered under the policy. *Southern Farm Bureau Casualty Ins. Co.* v. *Reed*, 231 Ark. 759, 332 S.W.2d 615 (1960) (citing *Life & Casualty Ins. Co.* v. *Barefield*, 187 Ark. 676, 61 S.W.2d 698 (1933)). This burden does not become the insurer's unless it claims the insured's damages were excluded from coverage under the policy. Nevertheless, regardless of the fact that Shelter claims it was not relying on an exclusionary provision to deny coverage, appellants still had the burden of making a prima facie case of coverage. Jury Instruction No. 9 therefore did not state the burden of proof incorrectly.

Appellants' second challenge to Instruction No. 9 is that it stated an improper definition of "windstorm." Appellants made a general objection that the windstorm provision of the policy was ambiguous, but the abstract does not reveal that appellants ever objected to the definition of windstorm as con-

tained in Instruction No. 9. Appellants raise this objection for the first time on appeal, and for that reason we do not address this argument. *Union Lincoln Mercury, Inc.* v. *Daniel*, 287 Ark. 205, 697 S.W.2d 888 (1985); ARCP Rule 51.

■ Appellants' third challenge to Instruction No. 9 is its failure to include a definition of "hail." Relying on *Southall* v. *Farm Bureau Mut. Ins. Co.*, 276 Ark. 58, 632 S.W.2d 420 (1982), appellants asked the trial court to instruct the jury that "hail" was to be given the meaning ordinarily applied to that term in everyday affairs of life. In *Southall*, there was undisputed testimony that the term "hail" included what was commonly referred to as "sleet;" therefore, this court approved the trial court's instructing the jury that "hail" could be given its ordinary meaning. In the present case, the trial court refused appellants' request to instruct the jury on the definition of "hail" used in *Southall* because, unlike the evidence presented in that case, here there was expert testimony that "hail" and "sleet" were completely different meteorological terms and concepts. In addition, there was absolutely no evidence that any hail was involved with the storm and the damages at issue in this case. Accordingly, the trial court did not err in refusing to instruct the jury that "hail" was to be given its common meaning. To have done so would have been contrary to the evidence presented. The trial court did not err in giving Instruction No. 9.

Appellants' fourth argument for reversal is a challenge to Jury Instruction Nos. 13 and 14, which dealt with the negligence of appellee Scoggins, the agent for Shelter. These two instructions were ordinary negligence instructions stating that appellants had the burden of proving damages proximately caused by Scoggins' negligence and defining negligence in the "ordinary, reasonably prudent person" standard. On appeal, appellants claim that in addition to these two instructions, the trial court should also have instructed the jury that Scoggins had the duty to disclose the fact that the structures were not covered if the weight of the ice or snow caused them to collapse. However, the abstract does not reveal that appellants proffered any such instruction to the trial court.

We have quoted ARCP Rule 51 many times and find it necessary to do so again here:

No party may assign as error . . . the failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection, and *no party may assign as error the failure to instruct on any issue unless such party has submitted a proposed instruction on that issue* [emphasis added].

As appellants did not submit any proposed instruction regarding Scoggins' duty to disclose non-coverage for collapse due to the weight of ice and snow, we cannot say the trial court erred in failing to so instruct the jury. ARCP Rule 51.

The order granting partial summary judgment and the judgment entered pursuant to the jury's verdicts are affirmed.