344 S.W.3d 100 (2009)
2009 Ark. App. 649
TWIN SPRINGS GROUP, INC., Appellant,
v.
KARIBUNI, LTD., and Gary Mellow, Appellees.
No. CA 09-127.
Court of Appeals of Arkansas.
October 7, 2009.
*101 Harry McDermott, Fayetteville, for appellant.
Conner & Winters, LLP, Fayetteville, by: John R. Elrod, for appellees.
JOHN MAUZY PITTMAN, Judge.
This is an appeal from an order dismissing an action for lack of personal jurisdiction. *102 Appellant is an Arkansas corporation; appellees are a Bermuda corporation and its principal. Appellant sued appellees alleging default on a contract under which appellant was to ship a twenty-foot container of chicken to appellees in Bermuda. Appellees moved to dismiss pursuant to Ark. R. Civ. P. 12 for lack of jurisdiction. A hearing was held on the Rule 12 dismissal motion; during the course of the hearing, it became apparent that the trial judge was considering affidavits as well as the pleadings, so that the hearing became one for summary judgment. At the conclusion of the hearing, the trial court found, on disputed evidence, that the contract had not been signed in Arkansas, and on that basis held that there were insufficient contacts to permit Arkansas courts to exert personal jurisdiction over appellees. Realizing that the trial court was ruling on the merits of the jurisdictional question rather than simply deciding whether appellees were entitled to summary judgment based on the pleadings and affidavits on file, appellant's attorney attempted to call appellant to testify that the contract had in fact been executed in Arkansas. The trial court refused to allow appellant to testify and entered an order dismissing appellant's complaint. This appeal followed. We reverse and remand.
Appellant argues that the trial court erred in ruling that, as a matter of law, it lacked personal jurisdiction over appellees, the nonresident defendants below. A motion to dismiss will be treated as one for summary judgment when a trial court considers matters outside the pleadings. Ganey v. Kawasaki Motors Corp., U.S.A., 366 Ark. 238, 234 S.W.3d 838 (2006). Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Id. In appeals from the granting of summary judgment, all proof submitted must be viewed in the light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. Harvison v. Charles E. Davis & Associates, 310 Ark. 104, 835 S.W.2d 284 (1992). The reviewing court decides if the granting of summary judgment was appropriate by determining whether the evidence presented by the moving party in support of the motion left a material question of fact unanswered. Id.
Arkansas courts have personal jurisdiction of all persons and corporations, and of all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment to the United States Constitution. Ark.Code Ann. § 16-4-101(A) and (B) (Repl.1999). To satisfy due process, assumption of personal jurisdiction over a nonresident defendant must be based on "minimum contacts" by the nonresident defendant in the forum state so as to not offend "traditional notions of fair play and substantial justice." Davis v. St. John's Health System, 348 Ark. 17, 71 S.W.3d 55 (2002) (citing International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The contacts between the nonresident defendant and the forum state must be such that a defendant would have a reasonable anticipation that he or she would be haled into court in that state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A finding of personal jurisdiction requires that there be some act by which the defendant purposefully avails himself or herself of the privilege of conducting business in the forum state. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957). A single contract can provide the *103 basis for the exercise of jurisdiction over a nonresident defendant if there is a substantial connection between the contract and the forum state. See McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). A promise to pay for services to be performed in the forum state may provide such a substantial connection. Williams Machine & Fabrication, Inc. v. McKnight Plywood, 64 Ark. App. 287, 983 S.W.2d 453 (1998). In Williams Machine & Fabrication, Inc., we held that a nonresident defendant corporation purposely availed itself of doing business in a forum state where the parties were in a business relationship lasting almost one year, where the nonresident defendant's corporate president himself went to the forum state to engage the plaintiffs to perform manufacturing services in the forum state, and where the suit arose directly out of the defendant's actions in the forum state. Id.
Viewing the evidence in the light most favorable to the party resisting the motion, it is clear that the trial court erred in granting summary judgment in this case. There was evidence to show that the contract in this case was initiated by appellees; that it was negotiated and executed on behalf of Karibuni, Ltd., by appellee Mellow while he was in Arkansas; and that the contract provided for an Arkansas corporation to ship Arkansas poultry to appellees in Bermuda.[1] We hold that, should this evidence be believed, the Arkansas court's exercise of jurisdiction over appellees would not violate due process, and that the trial court therefore erred in granting summary judgment.
Appellant also argues that, when the actual facts pertaining to jurisdiction are found, those factual questions regarding jurisdiction should be decided by the jury rather than by the trial judge. This argument lacks convincing argument or authority, and we therefore decline to address it at this time. See Pilcher v. Suttle Equipment Co., 365 Ark. 1, 223 S.W.3d 789 (2006).
Reversed and remanded.
HENRY AND BAKER, JJ., agree.
KINARD, J., concurs.
VAUGHT, C.J., and GLADWIN, J., dissent.[2] *107
*108 M. MICHAEL KINARD, Judge, concurring.
I write in concurrence with the majority opinion reversing the trial court's grant of summary judgment. I embrace the majority's R66 analysis of the standard of review for motions for summary judgment, and I agree that applying the facts viewed in the light most favorable to appellantto the Arkansas long-arm statute, Ark.Code Ann. § 16-4-101(A) and (B) (Repl.1999), supports a finding of personal jurisdiction.
I would point out that I believe the trial court erred in determining in its order granting the motion to dismiss that appellees' connection to Arkansas was premised solely on the use of interstate communication systems, thereby denying the Arkansas court personal jurisdiction. That erroneous finding alone supports reversal. As stated by the majority, the motion to dismiss with affidavits attached was taken as a motion for summary judgment under Ark. R. Civ. P. 12 for lack of jurisdiction, and the trial court disposed of the appellees' argument by summarily determining that the contract had not been signed in Arkansas. Therefore, the court found that appellees had insufficient contacts to permit Arkansas courts to exert personal jurisdiction.
The verified complaint raised a factual question by its own language: "The `Private Label Bag' was approved June 16, 2008," with the appellant further claiming that all events leading up to and including the bag-label approval occurred in "Washington County, Arkansas." The proof appellant presented with its response to the motion to dismiss supports this.
The evidence before the trial court included a purchase order dated June 11, 2008, which clearly stated that the "DRUMSTICKS THIGHS" that were the subject of the negotiations between the parties were subject to "price quote CIF Bermuda $1.25 lb to be confirmed with approval of Private Label Bag." This purchase-order language constituted a condition precedent to the formation of a contract between the parties. The affidavit of Luis Martinez of Twin Springs, which was filed with the response to motion to dismiss (motion for summary judgment), states that the contract was negotiated while the representative of appellee was in Arkansas and that the "Private Label Bag," which was the condition precedent in the purchase order, was approved on June 16, 2008, in Arkansas and then hand delivered to the Arkansas poultry producer. At no time did appellees meet proof with proof on the contract issue, leaving jurisdiction as a question of fact to be decided. Thus, while many of the relevant facts were disputed, the fact that appellee Gary Mello made a trip to Arkansas, during which time the "Private Label Bag" was approved, was uncontroverted.
By its construction of the disputed evidence, the court left questions of fact unresolved. If this had been a hearing on the merits, the trial court could properly have made findings of fact on disputed evidence. Not so in a hearing on motion for summary judgment. Summary judgment *109 should only be granted when it is clear that there are no genuine issues of fact to be litigated and the moving party is entitled to judgment as a matter of law. Hisaw v. State Farm Mut. Auto. Ins. Co., 353 Ark. 668, 122 S.W.3d 1 (2003). In the instant case, the trial court prematurely granted the dismissal based on an error in construing the evidence before it.
LARRY D. VAUGHT, Chief Judge, dissenting.
The complaint in this contract action was filed by Twin Springs Group against Karibuni, Ltd. and Gary Mello. It alleged that an agreement was entered into by the parties on June 11, 2008, as evidenced by attached purchase orders to that effect. The complaint further alleged that the terms of the contract provided that Karibuni would pay $43,750 and Twin Springs Group would provide chicken when the "private label bag" was approved, which was accomplished on June 16, 2008.
Karibuni and Mello filed a motion to dismiss for lack of personal jurisdiction and attached an affidavit of Mello confirming that the purchase orders evidencing the contract were executed on June 11, 2008, and that subsequently he traveled to Arkansas on June 16, 2008, to meet with Twin Springs Group's representative, Luis Martinez. Twin Springs Group filed a response to the motion to dismiss and attached an affidavit of Martinez, wherein he stated that the agreement was reached, through purchase orders, on June 11, and that negotiations were completed by email. Martinez's affidavit also stated that the "private label bag" was approved at the June 16 meeting in Arkansas.
At the hearing on the motion to dismiss, the trial court had before it the pleadings, motion, response, and affidavits. Before proceeding with arguments, the trial court asked the attorneys if they had any further evidence to present. Both sides said they did not. During arguments, Twin Springs Group's attorney referred to his client's affidavit and suggested that the court would be ruling on summary judgment. After hearing the arguments, the trial court granted the motion to dismiss, ruling that the contract was executed on June 11, 2008, through the mail or by electronic means, and that there were insufficient contacts with Arkansas to provide personal jurisdiction over Karibuni and Mello. After the trial court announced its ruling, Twin Springs Group's counsel stated that he wanted to put on testimony from his client that the contract was not signed until the June 16, 2008 meeting in Arkansas. The trial court stated, "[i]f every time somebody lost they said, wait a minute, I want to put some more evidence on, that's just not how it works." The trial court said the evidence was closed, and the ruling stood.
Appellant filed a motion for reconsideration, which was denied by the trial court. In its order denying the motion for reconsideration, the court made factual findings based on the pleadings, affidavits, and exhibits, acknowledging that both parties declined when asked to present additional testimony. The factual findings were appropriately made only on the issue of personal jurisdiction. It was not a ruling on the merits of the complaintthe merits of the contract case were not addressed. Therefore, a remand for a trial on the issue of personal jurisdiction is not appropriate.
Our supreme court, in Ganey v. Kawasaki Motors Corp., U.S.A., 366 Ark. 238, 234 S.W.3d 838 (2006), affirmed a trial court's dismissal of a suit for products liability because of lack of personal jurisdiction. In that case, as in this one, the defendants filed a motion to dismiss, but the court considered affidavits. Our supreme *110 court held that the motion to dismiss was converted to one for summary-judgment and stated that it would apply a summary-judgment standard of review. Ganey, 366 Ark. at 245, 234 S.W.3d at 842. However, in upholding the trial court, the supreme court examined the evidence, including facts that were used by the trial court, and held that there were insufficient contacts with Arkansas to confer personal jurisdiction. Id. at 247-49, 234 S.W.3d at 844-45.
In Moran v. Bombardier Credit, Inc., 39 Ark. App. 122, 839 S.W.2d 538 (1992), our court reversed a trial court's finding of personal jurisdiction. In that case the appellants filed a motion to dismiss. The trial court ruled in a letter opinion, with factual findings, that jurisdiction existed and subsequently granted summary judgment on the merits to the appellees. Our court reversed, not by finding that issues of fact were left to be decided, but that the trial court got the facts wrong on the issue of personal jurisdiction. Moran, 39 Ark. App. at 129-30, 839 S.W.2d at 542-43.
Moran set forth the five factors that must be considered in deciding whether minimum contacts exist to impose personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Moran, 39 Ark. App. at 125, 839 S.W.2d at 540. It further reiterated that whether the "minimum contacts" requirement has been satisfied is a question of fact, and each question of jurisdiction must be decided on a case-by-case basis. Id., 839 S.W.2d at 540 (citing Jagitsch v. Commander Aviation Corp., 9 Ark. App. 159, 163, 655 S.W.2d 468, 470 (1983); Capps v. Roll Service, Inc., 31 Ark. App. 48, 53, 787 S.W.2d 694, 697 (1990)).
The case at bar is not a standard summary-judgment case. Moran, and the cases cited therein, more clearly set forth the standard to follow in these mixed law and fact situations involving personal jurisdiction. Whether styled a dismissal or a summary judgment, the ultimate question of jurisdiction must be analyzed factually on a case-by-case basis. That is exactly what the trial court did in its order denying the motion to reconsider. The trial court applied the factors set forth in Moran, it made the correct decision, and it should be affirmed. Therefore, I dissent. I am authorized to state that Judge Gladwin joins in this opinion.
NOTES
[1] This evidence was contained in an affidavit that was attached to appellant's response to the motion to dismiss the complaint. It was before the trial court at the hearing on the motion to dismiss. It should not be confused with the further testimony appellant attempted to submit at the conclusion of the hearing, which is essentially duplicative.
[2] The dissenting opinion is puzzling. We do not know whether the dissenting judges are asserting that a trial judge may routinely decide contested issues of fact in the course of a motion for summary judgment, or whether they believe that the trial judge properly did so in this case because it was not a summary judgment motion but instead a hearing on the merits of personal jurisdiction. The former is contrary to a veritable mountain of case law mandating that we review a grant of summary judgment in the light most favorable to the party resisting the motion. See, e.g., Harvison v. Charles E. Davis & Associates, supra. The latter is contrary to the facts as set out in the record. The trial judge announced that the parties were present for a hearing on a motion to dismiss for lack of personal jurisdiction; that appellant's counsel believed this to be the purpose of the hearing is evidenced by his recognition that the trial court, by relying on matters outside the pleadings, was treating the motion as one for summary judgment. Nor was there any waiver by appellant permitting the issue of jurisdiction to be decided on the merits at that hearing. Although the trial judge did ask early in the hearing whether there would be "any other evidence" on this matter, the response "not at this time" clearly indicates that further proceedings were expected before the facts of jurisdiction would be finally resolved. Finally, the surprise of appellant's attorney at the conclusion of the proceeding is palpable. Although to do so will egregiously lengthen our opinion, a proper understanding of the issue requires that the hearing transcript be reproduced in its entirety:

HEARING ON MOTION TO DISMISS November 6, 2008
THE COURT: The next hearing is in case number CV 2008-2659, styled Twin Springs Group, Incorporated, represented by Harry McDermott, versus Karibuni Limited and Gary Mellow, represented by Mr. Smiley. And you're with Conner and Winter, I guess?
MR. SMILEY: Yes.
THE COURT: And did you file a pleading?
MR. SMILEY: I know Mr. Elrod did; I'm not sure that I did.
THE COURT: Okay. And Mr. Miller? No, I'm sorry, Mr. Miller is your client. Now, tell me your first name again.
MR. SMILEY: Christopher.
THE COURT: Christopher Smiley. And this is an issue on a long-arm statute of jurisdiction of this court to hear this matter over a contract on chicken parts; thighs, drumsticks, or something?
MR. SMILEY: Yes, sir.
THE COURT: I read this yesterday. Let's see, there was a motion to dismiss the complaint filed by Mr. Smiley back on September the 30th. That's what we're here to hear; is that right?
MR. SMILEY: Yes, sir.
THE COURT: All right. Does either side have any other evidence to present on the matter? R50
MR. McDERMOTT: No, Your Honor.
THE COURT: Mr. Smiley?
MR. SMILEY: No, Your Honor, not at this time.
THE COURT: Mr. Smiley, it's your motion; do you have argument to make?
MR. SMILEY: Yes, I do. Your Honor.
THE COURT: That's fine. If I could get you to use the podium.
MR. SMILEY: Your Honor, as set forth in defendants' brief, this case involves a terminated purchase order for the delivery of chicken parts from Arkansas, its point of production, to Bermuda, its destination. The defendants are in the food distribution business in Bermuda. The only contact either the company or Gary Mellow, its employee, has had with Arkansas was the contract in question combined with one physical trip to the State of Arkansas 
THE COURT: Aren't there cases that say you obtain long-term jurisdiction on only the contact of the contract?
MR. SMILEY: Your Honor, you are correct. There are cases that state that you can have jurisdiction  I'm sorry. While a single contract can provide a basis for the exercise of jurisdiction over a non  R51 resident, there must be substantial connection with the contract and the forum state. And what our argument is, is the contract was formed via phone and email messages between Bermuda  between our clients in Bermuda, Mr. Mellow and Karibuni, and Twin Springs here in Fayetteville, Arkansas. And those are the only contacts before the contract was formed. The contract was formed on  according to  plaintiffs allege that on June 11, 2008, Karibuni and Gary Mellow individually agreed to pay $43,750 in exchange for Twin Springs' delivery of 875 cases of chicken to Bermuda. Attached to the complaint there is a purchase order from Karibuni. Again, this purchase order is dated June 11, 2008. Thus, based on the foregoing, plaintiffs assert that a contract between Karibuni and Twin Springs was executed on June 11, 2008.
The defendants admit that Gary Mellow came to Arkansas on or about June 15 through June 17, 2008. When Gary Mellow entered the state of Arkansas for the first time, there was already a valid  given the facts most favorable to the plaintiff and according to his complaint, there was  he alleged there was a contract already executed at that time. And again, after the contract was fully executed, the R52 defendant made a trip to Arkansas. And as you're aware, this Court may assert personal jurisdiction if there are sufficient contacts between the defendant and the forum state. Contacts with the forum state are sufficient with defendants' conduct and connection with the forum state are such that he should reasonably anticipate being haled into Arkansas. Plaintiffs cite SD Leasing, Inc. v. Al Spain & Associates, Inc. [277 Ark. 178, 640 S.W.2d 451 (1982)], in his brief. Plaintiff's reliance on this case is misplaced. The contacts in SD Leasing were far greater than the contacts in the present case. In that case, the Arkansas Supreme Court held that the defendant took numerous steps that warranted the exercise of personal jurisdiction in Arkansas. Again, there were numerous contacts. The contract at issue was mailed to defendant where it was reviewed, approved and accepted. Defendant mailed his monthly payments directly to the plaintiffs, as well as two amendments. Most importantly, the contract also provided that in event of default that the defendant would consent to and be subject to jurisdiction of the courts in the State of Arkansas.
In another civil case, Glenn v. Student Loan Foundation [53 Ark. App. 132, 920 S.W.2d 500 (1996)], personal jurisdiction cannot be asserted R53 over a Tennessee resident who signed a note issued by an Arkansas bank and guaranteed by an Arkansas corporation. Again, while a single contract can provide the basis for the exercise of jurisdiction over a nonresident defendant, there must be a substantial connection between the contract and the forum state. The connection in Glenn was found to be too tenuous. The contract was signed by the Tennessee resident outside the state of Arkansas and provided only that payments be mailed to Arkansas. Since Arkansas courts of the Eighth Circuit have long held that the use of interstate mail and banking facilities, standing alone, is insufficient to satisfy due process in asserting long-arm jurisdiction over a nonresident defendant, long-arm jurisdiction cannot be asserted.
Much like Glenn, in the present case the connection in Arkansas  to Arkansas is solely based on the use of interstate mail and banking facilities. The defendants only connection with the state is the contract was signed by a foreign resident outside of Arkansas. Since the use of interstate mail and banking facilities, standing alone, is insufficient to assert long-arm jurisdiction over a nonresident, this court lacks personal jurisdiction over the R54 defendant.
THE COURT: Thank you, Mr. McDermott.
MR. McDERMOTT: Your Honor, it's very clear in Arkansas, you come into Arkansas and transact business, you are subject to Arkansas jurisdiction. We have some Bermudians coming into Arkansas and negotiating a contract with an Arkansas corporation for Arkansas chickens, and for that reason, since we have an Arkansas  they come into Arkansas, they negotiated a contract in Arkansas for the purchase of Arkansas chickens, I think 
THE COURT: I thought the negotiation was long before Mr. Mellow ever made the trip here with his son.
MR. McDERMOTT: Well, we disagree with that.
THE COURT: Well, what evidence is in the record that 
MR. McDERMOTT: I filed an affidavit. If this is going to be a motion for summary judgment, I've got an affidavit attached to my 
THE COURT: What did that say?
MR. McDERMOTT: Well, Gary Mellow 
THE COURT: I know the trip he came here. He admits that in his affidavit. They say it was after the contract was entered into, after the June 11th R55 signing.
MR. McDERMOTT: Yes, sir, I know they say that. In his affidavit, Mr. Martinez states that "While Gary Mellow was in Arkansas he and I negotiated a contract for me to ship Arkansas poultry to Bermuda. He sent to Arkansas to Twin Springs a purchase order for the shipment of Arkansas poultry." That's going to be our evidence.
THE COURT: You're saying that he came to Arkansas and negotiated this contract?
MR. McDERMOTT: Yes, sir.
THE COURT: But your pleading doesn't say that, does it? Maybe it doesn't say.
MR. McDERMOTT "On June 11, 2008, Karibuni and Gary Mellow individually agreed to pay Twin 
THE COURT: I agree it doesn't say. Maybe I just assumed  so he signed this purchase order in Arkansas?
MR. McDERMOTT: No, sir, he sent it to Arkansas from Bermuda. I don't know if he signed it 
THE COURT: It says here June 11. Why didn't he just sign it while he was here?
MR. McDERMOTT: Well, then he did, Your Honor.
THE COURT: So when does he say he was here in his affidavit? Or when do you say he was here, I R56 guess is a better question.
MR. McDERMOTT: He, here in Arkansas, orally negotiated a contract while he was here. Then he sent to Arkansas, to Twin Springs, he sent them the purchase order. Mr. Mellow said he was in Arkansas discussing the 
THE COURT: Well, I understand that. There are a lot of cases 
MR. McDERMOTT: We've got a contract with Arkansas for Arkansas product. That's  we've got plenty of contacts with Arkansas to meet the Fourteenth Amendment.
THE COURT: I mean, I think if this contract was signed in Bermuda, then you're falling right under the umbrella of he Glenn v. Student Loan case that says, "Although a single contract can provide the basis for the exercise of jurisdiction over a nonresident defendant if there is a substantial connection between the contract and the forum state, CDI Contractors, Inc. v. Goff Steel Erectors, Inc., 301 Ark. 311, 783 S.W.2d 846 (1990), we think that the connection in the present case is too tenuous to support a finding of personal jurisdiction. As was the case in CDI Contractors, supra, the contract in the case at bar was signed by the appellant outside R57 of Arkansas"  you've admitted it was signed outside of Arkansas  "and provided only that payments be mailed to Arkansas."
MR. McDERMOTT: Well, again, Your Honor, we have some Bermudians coming to Arkansas, negotiating a contract, we get a purchase order signed by this guy, which is received in Arkansas, to ship him Arkansas chickens.
THE COURT: Uh-huh.
MR. McDERMOTT: So we've got people conducting business in Arkansas for an Arkansas product, and that's plenty of contact to assert your jurisdiction over this transaction.
THE COURT Thank you, Mr. Smiley, do you have argument?
MR. SMILEY: Yes, I do, Your Honor. I don't know if you have the amendment to the affidavit of Gary Mellow that was filed on October 3rd of this year.
THE COURT: Let me find it. I'm not sure I've got it. Yeah, amendment, I'm with you.
MR. SMILEY: I have filed it, Your Honor. The first point of my argument is that as Mr. McDermott correctly stated, on the Complaint, the breach of contract complaint, it states, "On June 11, 2008, Karibuni and Gary Mellow individually agreed to pay Twin Springs $43,750 in exchange for Twin Springs' delivery of 875 cases of chicken to Bermuda." According to a motion to dismiss, the plaintiffs' version of the facts are to be taken as true for that purpose solely. Well, if you look at June 11, 2008 R58 on the Complaint, on Gary Mellow's amendment to the affidavit, he attaches  or we attached an email. It's printed in the bottom right-hand corner, 9/ 25/ 2008. The email is from com at twinsprings.net and the signature line says Jeff at Twin Springs Group, Inc.
THE COURT: Met them yesterday.
MR. SMILEY: Yes.
THE COURT: Meaning June 16th.
MR. SMILEY: Yes, sir.
THE COURT: Okay, Yeah, I'm with you.
MR. SMILEY: And so I think we've shown that the meeting occurred between June  I'm sorry. I apologize. As we've previously alleged, that meeting occurred between June 15th and June 17th.
THE COURT: What about the fact that he came after the contract was entered into, he and his son came to Arkansas and visited with him? You don't think that should put them on notice that they might R59 be haled into an Arkansas court over this contract? I mean, they come to Arkansas and touch the ground here in Arkansas?
MR. SMILEY: Well, the case law looks at the contacts prior to entering into the contract. It's not subsequent acts. If contracts  I'm sorry, if Arkansas didn't have jurisdiction over a defendant, and the defendant subsequently came to Arkansas, that pretty much would submit a lot of people to jurisdiction, where that wouldn't have before. So, the case laws doesn't look at after the contract was entered into. And as we have to assume, for the purpose of this motion, only that the contract was entered into on June 11, pursuant to Mr. McDermott's argument in his count of breach of contract, I mean, the meeting only occurred after Mr. Mellow became suspicious of who he was dealing with. And he came to discover later that he was not dealing with Simmons Foods, he was dealing with a food broker, which Karibuni and Mellow don't deal with normally.
THE COURT: All right. Thank you. Do you have any other cases, Mr. McDermott?
MR. McDERMOTT: Oh, yes, sir.
THE COURT: That I haven't heard about?
MR. McDERMOTT: Yes, sir. First of all, we've R60 got Nix v. Dunavent, which says a person over which the courts of Arkansas shall have personal jurisdiction includes any legal entity or personal representative to the extent permitted by the due process of the law clause of the Fourteenth Amendment. And then the case of Bowsher v. Digby [243 Ark. 799, 422 S.W.2d 671 (1968)] specifically says this court may exercise personal jurisdiction over a legal entity, who acts directly or by an agent, as to any cause of action or claim arising from the entity's transacting any business in the state, or contracting to supply services or things in the state.
THE COURT: All right. Thank you.
MR. McDERMOTT: And then we have all these cases that I cited to you in my brief that says negotiations within the state leading up to the execution of the contract constitutes such a minimal contact that are sufficient to give this court Arkansas jurisdiction over the contract. Now, they're saying, now, wait a minute, these negotiations occurred after the contract. Any we're saying, no, Your Honor, they occurred before the contract.
THE COURT: Okay.
MR. McDERMOTT: Anyway, you've got an Arkansas R61 contract, Arkansas product, and these guys entering Arkansas, so you have personal jurisdiction over these people.
THE COURT Well, gentlemen, as pointed out, you know, at first blush when you think that there's a contract with an Arkansas company to do something, to ship from Arkansas to somebody in Bermuda, that that ought to be sufficient contacts. But when I start looking at these cases, this Glenn v. Student Loan Guaranty [Guarantee] Foundation, in `96, again, that's an Arkansas corporation that makes a contract with someone, but in that case they pointed out a single contract can provide the basis for the exercise of jurisdiction over a non-resident defendant if there is a, quote, substantial connection between the contract and the forum state. And then they went on to say that where the contract at issue was signed by the appellant outside of Arkansas  and I am convinced from the evidence before this court and the pleadings and these affidavits and exhibits that it clearly states that in the email that was dated June the 17th  well, I've lost it  there it is  an email dated June 17th from someone at Twin Springs to Gary Mellow, dated 17th, '08, "It was a pleasure meeting both of you yesterday," to me meaning June 16th. R62
These obviously were faxed contracts by looking at the signatures, and that's what's alleged by the defendant, that these were faxed. And I think Mr. McDermott admitted that it was a faxed copy that was signed and faxed in here, so clearly it was signed outside of Arkansas, which is the same thing we have here, premised solely on the use of interstate mail or banking facilities. Well, we don't even have that here. I guess you would say we have interstate email being used. In that case the trial court lacked personal jurisdiction and they reversed the judge and said that he had personal jurisdiction. Some of the other cases, CDI Contractors, Inc. v. Goff, that contract, I think, was to be conducted outside of Arkansas, and they alleged again that there wasn't sufficient minimum contacts to allow the case to proceed.
You know, I think this case boils down, Mr. McDermott, if you've got a contract with Arkansas corporation or company, is that going to be sufficient contacts to expect to be haled into that court and due process not violated, and I just don't think our cases say that. While I understand your predicament, you know, well, I guess I've got to go to Bermuda to sue these folks  R63
MR. McDERMOTT: Fourteen won't let me.
THE COURT: Well, appeal. You know, that's fine, too, and maybe we'll get something more definitive. But from what I see here, it's going to be the ruling of the court that the long-arm statute has not been satisfied. And I know that we say we're going to exercise the maximum jurisdiction we can exercise, but based on these cases, it just doesn't appear to me that there's sufficient contacts. So, over your objection, I'm going to grant the motion to dismiss. I'm going to have Mr. Smiley prepare the order for the reasons stated from the bench, and we'll get it entered and you can talk to your client about either going to Bermuda or appealing this decision.
MR. McDERMOTT: He's going to appeal it. Judge, I think you're misunderstanding. He didn't go to Bermuda to sign this contract.
THE COURT: I know that.
MR. McDERMOTT: The purchase order was sent 
THE COURT: The other side  Mr. Smiley's client signed it in Bermuda. It wasn't here.
MR. McDERMOTT: First, I'm going to say it was an oral contract. Second, I'm going to say it wasn't a contract until it was received by an Arkansas R64 corporation. But, Judge, I appreciate your argument and I'll do my best on appeal.
THE COURT: That's fine. Mr. Smiley, if you will prepare the order and send it to Mr. McDermott, I'm going to hold it a few days, so 
MR. McDERMOTT: Judge, I'm sorry, he says it was signed here.
THE COURT: Well, you can talk to your client.
MR. McDERMOTT: I'm going to withdraw  if I said it was signed over there and emailed, I was wrong. It was signed here.
THE COURT: Well, you can always file a motion to vacate and to rehear the matter, rehear this issue.
MR. McDERMOTT: But you understand that my client is telling me it was signed here.
THE COURT: I understand that right now, but the time for testimony is gone.
MR. McDERMOTT: There was no testimony.
THE COURT: Well, I asked folks if they wanted anybody to testify. If you want to file a motion for rehearing, I'll take up the motion and maybe give you a rehearing.
MR. McDERMOTT: Well, we've got him here right now. R65
THE COURT: Well, I understand.
MR. McDERMOTT: You have us 30 minutes, and we've got five. It won't take five.
THE COURT: I'm not talking about time, I talking about how it works. If every time somebody lost they said, wait a minute, I want to put more evidence on, that's just not how it works. You file your motion, and if there's good cause, I'm going to give you another hearing, if there's a legitimate reason for not putting it on at the start.
MR. McDERMOTT: Well, I just felt that you were relying on the fact that 
THE COURT: I'm relying on what's in the record right now. You know, if you've got more testimony, you file a motion and we'll see if we're going to rehear it.
MR. McDERMOTT: Thank you, Judge.
THE COURT: Thank you.
(Proceedings concluded on November 6, 2008.)