2013 Ark. 130

**HOTFOOT LOGISTICS, LLC and Freight Ambulance, LLC, Appellants**

v.

**SHIPPING POINT MARKETING, INC.; David Fishgold; and Louis Fishgold, Appellees.**

No. 12–836.

Supreme Court of Arkansas.

March 28, 2013.

Ronald G. Gillert, Little Rock and Tona M. DeMers, for appellants.

Cross, Gunter, Witherspoon & Galchus, P.C., Little Rock, by: J.E. Jess Sweere, for appellees.

COURTNEY HUDSON GOODSON, Justice.

Appellants Hotfoot Logistics, LLC, and Freight Ambulance, LLC, appeal from a Pulaski County Circuit Court order granting motions to dismiss filed by appellees, Shipping Point Marketing, Inc. (SPM); Louis Fishgold, SPM's president; and David Fishgold, the president of Western Brokerage, Inc. (collectively "the Fishgolds"), based on a lack of personal jurisdiction. For reversal, appellants argue that the circuit court erred in granting appellees' motions to dismiss and a motion for attorney's fees. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(a)(7) (2012), as this case presents a subsequent appeal. We reverse and remand.

This case originally involved four independent shippers: (1) SPM, located in Phoenix, Arizona; (2) BoniPak Produce, Inc., located in Santa Maria, California; (3) Salyer American Fresh Foods, Inc., located in Salinas, California; and (4) Taylor Farms California, Inc., also located in Salinas, California. On November 25, 2008, these shippers engaged Western Brokerage, a transportation broker in Phoenix, Arizona, to arrange for the transportation of produce from Yuma, Arizona, to Scranton, Pennsylvania, and Albany, New York. Subsequently, Western Brokerage requested carriers by posting a notice on Internet Truck Stock, an Internet load board used by the trucking industry to solicit trucking business. Responding to Western Brokerage's solicitation, Hotfoot, an Arkansas trucking company based in Little Rock, agreed to transport multiple

loads for $5,700. According to Hotfoot, it obtains most of its freight contracts via the Internet load boards, and the majority of its freight contracts are one-time transactions. Hotfoot then engaged one of its dedicated carriers, Freight Ambulance, an Arkansas company based in Cabot, to deliver the produce to Pennsylvania and New York.

Freight Ambulance picked up the freight from four locations in Yuma, Arizona, for the shippers. Specifically, Freight Ambulance picked up a load from Dole/Skyview Cooker in Yuma on behalf of SPM for delivery to Eastern Produce in Scranton, Pennsylvania. Western Brokerage then faxed a six-page rate-confirmation contract to Hotfoot's home office in Little Rock. The rate-confirmation contract listed, among other things, the carrier rate for the cargo, as well as a description of the vegetable products to be picked up from each shipper. In this contract, Western Brokerage promised to pay Hotfoot $5,700 for transporting the loads. A Hotfoot representative signed the document and returned the rate confirmation to Western Brokerage by fax.

Freight Ambulance delivered a portion of the produce to Albany, New York, on November 29, 2008, and delivered the balance of the load to Scranton, Pennsylvania, on November 30, 2008. Freight Ambulance returned the bills of lading to Little Rock, where Hotfoot prepared the invoice for the freight charges. After these deliveries, Hotfoot made a demand on Western Brokerage for the payment of the unpaid balance but was unsuccessful in its collection efforts. Western Brokerage had closed its business, and Hotfoot shifted its efforts to collect the freight charges toward the shippers, who claimed they had already paid Western Brokerage. SPM claimed to have no knowledge of Western Brokerage's whereabouts, although the two companies allegedly shared facilities in Phoenix, Arizona, and the Fishgolds were the presidents of the respective companies.

Appellants originally filed suit in the Pulaski County District Court, but the case was later transferred to the Pulaski County Circuit Court. On April 14, 2010, Hotfoot filed an amended complaint against SPM, the other independent shippers, and Western Brokerage for breach of contract. In its complaint, Hotfoot alleged one count of breach of contract against the shippers for payment of the freight charges in the amount of $5,700; one count of breach of contract against Western Brokerage in the amount of $5,700; and one count of fraud against the Fishgolds for conspiring to commit fraud against Hotfoot to arrange the load and then refuse payment. Appellees filed motions to dismiss, and the circuit court granted them for lack of personal jurisdiction. Subsequently, appellees filed a motion for attorney's fees, which the circuit court granted. An appeal followed. In *Hotfoot Logistics, LLC v. Shipping Point Marketing, Inc.*, 2013 Ark. 72, 2013 WL 655203, we dismissed the appeal without prejudice for lack of a final order. On July 13, 2012, the circuit court entered a final order dismissing all separate appellees, and from that order, appellants timely filed their notice of appeal. On appeal, appellants limit their arguments to SPM and the Fishgolds.

For their first point on appeal, appellants argue that the circuit court erred in granting SPM's motion to dismiss for lack of personal jurisdiction. Specifically, appellants claim that SPM, an Arizona shipper, contracted with Hotfoot, an Arkansas trucking company, thereby subjecting itself to personal jurisdiction in Arkansas for the purpose of collecting unpaid freight charges. In response, appellees argue that appellants failed to allege sufficient facts to establish that appellees purpose-

fully availed themselves of the privilege of conducting business in Arkansas. Appellees maintain that they had no contacts with Arkansas and that any contract between SPM and Hotfoot did not establish any contacts between Arkansas and appellees.

■ As a preliminary matter, while the parties treat this case as an appeal from an order granting a motion to dismiss, we note that six exhibits were attached to appellants' amended complaint. These exhibits included Western Brokerage's rate-confirmation contract, an affidavit of David Lasater, Hotfoot's vice president, and four bill-of-lading contracts. The circuit court's order of dismissal reads that its findings were "[b]ased upon the pleadings and *all other things and matters* properly before the Court[.]" (Emphasis added.) It is well settled that when a circuit court considers matters outside the pleadings, appellate courts will treat a motion to dismiss as one for summary judgment. *Koch v. Adams,* 2010 Ark. 131, 361 S.W.3d 817. Because it is clear to this court that the circuit court considered exhibits outside the pleadings in making its ruling, the court's dismissal is converted to one for summary judgment. *Id.*

■ Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Gentry v. Robinson,* 2009 Ark. 634, 361 S.W.3d 788. On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Kyzar v. City of W. Memphis,* 360 Ark. 454, 201 S.W.3d 923 (2005). Summary judgment is not proper where the evidence reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Id.*

■ We now turn to the issue of personal jurisdiction. Arkansas courts have personal jurisdiction over all persons and corporations, and of all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment to the United States Constitution. Ark.Code Ann. § 16–4–101(A)–(B) (Repl.2010). In our recent case of *Yanmar Co., Ltd. v. Slater,* 2012 Ark. 36, 386 S.W.3d 439, we outlined the requirements of personal jurisdiction in Arkansas as follows:

The seminal case on the issue of personal jurisdiction is *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), wherein the United States Supreme Court first articulated the minimum-contacts test as a way to establish jurisdiction over a defendant not physically present in the state. The touchstone principle announced by the Court in *International Shoe* is that due process requires "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The Court in *International Shoe* looked to the nature of the contacts that the nonresident defendant had with the forum state, explaining that attention must be paid to the "quality and nature" of those contacts, and also to whether that defendant through those contacts enjoyed the "benefits and protection" of the laws of the foreign state. *Id.* at 319, 66 S.Ct. 154. The Court further acknowledged

that there may be situations in which a nonresident-defendant's contacts with a forum state may be so substantial and continuous as to justify jurisdiction over that defendant, even though the cause of action is "entirely distinct from those activities." *Id.* at 318, 66 S.Ct. 154.

The Supreme Court has revisited the law on personal jurisdiction since the holding in *International Shoe*. Notably, the Court held in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), that a nonresident defendant's contacts with a forum state must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). And, of significance to the instant case, the Supreme Court in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), explained the distinction between the two types of personal jurisdiction: general and specific. There, the Court stated that when a cause of action arises out of or is related to a defendant's specific contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. *Id.* However, if the exercise of jurisdiction arises in a case not stemming from the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction. *Id.* When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if generally its con-

tacts with the state are continuous, systematic, and substantial. *Id. Yanmar*, 2012 Ark. 36, at 5–7, 386 S.W.3d at 444.

A finding of personal jurisdiction requires that there be some act by which the defendant purposefully avails himself or herself of the privilege of conducting business in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). More significantly, a single contract can provide the basis for the exercise of jurisdiction over a nonresident defendant if there is a substantial connection between the contract and the forum state. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Nelms v. Morgan Portable Bld. Corp.*, 305 Ark. 284, 808 S.W.2d 314 (1991). Whether the "minimum contacts" requirement has been satisfied is a question of fact. *Wisconsin Brick & Block Corp. v. Cole*, 274 Ark. 121, 622 S.W.2d 192 (1981).

The case of *SD Leasing, Inc. v. Al Spain & Assocs.*, 277 Ark. 178, 640 S.W.2d 451 (1982), illustrates how a single contract and a substantial connection to our state can confer personal jurisdiction over the contracting parties. In *SD Leasing*, the appellee, a Florida corporation, defaulted on a non-cancelable lease agreement between it and the appellant, SD Leasing, Inc., an Arkansas corporation. As a result, the appellant filed suit in Arkansas to recover the balance due. The trial court ultimately granted the appellee's motion to dismiss for lack of personal jurisdiction. However, we reversed on the basis that sufficient minimum contacts existed to meet due-process requirements for personal jurisdiction of the nonresident appellee. We held that the contacts were sufficient where (1) the lease, although executed in Florida, was mailed to the appellant in Arkansas where it was reviewed, ap-

proved, and accepted; (2) the appellee mailed its monthly payments directly to appellant in Arkansas, as well as two memos informing the appellant it was going out of business; (3) the lease agreement specifically provided that the lease "shall be governed by and construed under the laws of the State of Arkansas"; and (4) the lease provided that, in the event of default, the lessee would consent to and be subject to the jurisdiction of the courts of the state of Arkansas to enforce the terms of the lease. *Id.* at 180–81, 640 S.W.2d at 452.

Further, we cite with approval the court of appeals' decision of *Twin Springs Group, Inc. v. Karibuni, Ltd.*, 2009 Ark. App. 649, 344 S.W.3d 100. In *Twin Springs,* the court of appeals |₈held that the trial court erred in granting summary judgment because there was evidence to show that a contract was initiated by appellees; that it was negotiated and executed on behalf of appellee Karibuni by appellee Mellow while he was in Arkansas; and that the contract provided for an Arkansas corporation to ship Arkansas poultry to appellees in Bermuda. The court of appeals held that, should this evidence be believed, the Arkansas court's exercise of jurisdiction over appellees would not violate due process, and that the trial court therefore erred in granting summary judgment. *Id.* at 4, 344 S.W.3d at 103.

On appeal, appellants primarily make a specific-jurisdiction argument surrounding Hotfoot's arrangement of a one-time delivery of the freight from Arizona to Pennsylvania and New York. Appellants claim that a bill-of-lading contract is a single contract by which an Arkansas court may exercise personal jurisdiction over the appellees. Thus, the key issue in this case is whether a genuine issue of material fact arises regarding Hotfoot's contract and any substantial connection that it may have with the state of Arkansas.

A bill of lading operates as both a receipt and a contract. *Ark. W. Ry. Co. v. Robson,* 171 Ark. 698, 285 S.W. 372 (1926); *St. Louis, Iron Mountain & S. Ry. Co. v. Citizens' Bank of Little Rock,* 87 Ark. 26, 112 S.W. 154 (1908). Contracts or bills of lading on which a party is named as a consignee bind that party to the agreement. *BDL Int'l v. Sodetal USA, Inc.,* 377 F.Supp.2d 518 (D.S.C.2005). In *Lomanco, Inc. v. Missouri Pacific Railroad Company,* 566 F.Supp. 846 (E.D.Ark.1983), the Arkansas federal district court ruled that it did not have personal jurisdiction over the defendants when one was a citizen of New York and the other |₉was a British corporation located in Hong Kong, and neither of them had any connection with the state of Arkansas or had engaged in business in Arkansas. The district court reasoned that the defendants were not parties to the bill of lading, nor had they entered into a contract with one another. *Id.*

However, unlike *Lomanco,* the parties in the case at bar are parties to the bill-of-lading contract. Here, the record includes one specific bill-of-lading contract for a shipment from Arizona to Pennsylvania for the transport of Dole food products. In that particular bill-of-lading contract, SPM is listed as the consignee and Hotfoot as the carrier. The contract states, "CARRIER ARRANGED FOR BY CONSIGNEE[.] DESTINATION SCRANTON, PA EASTERN[.]" Justin Pierce signed the contract, acknowledging the "consignee's receipt." In a similar bill-of-lading with BoniPak, Pierce signed the contract next to a line entitled "Driver's Name" and listed the trucking company as "Hot Foot Express." Pierce, who traveled from Arkansas to make a cross-country trip from Arizona to Pennsylvania and New York, then returned the bill of lading to Arkansas, where Hotfoot used it to prepare its invoice for payment. Thus, this

evidence may suggest a substantial connection between the contract and Arkansas as the forum state. *McGee, supra.* To that end, SPM may have purposefully availed itself of the Arkansas courts. Given the context of summary judgment, this single bill-of-lading contract, for which SPM is the consignee, raises a question of fact regarding specific, personal jurisdiction over SPM. *See SD Leasing, Inc., supra.*

Further, we note that SPM arranged for Western Brokerage to transport its products,[10] and as a result, Western Brokerage faxed a six-page rate-confirmation contract to Hotfoot's home office in Little Rock after Hotfoot answered Western Brokerage's solicitation for carriers. In its rate-confirmation contract, Western Brokerage promised to pay Hotfoot $5,700 for transporting the loads, and a Hotfoot representative signed the document and returned the contract to Western Brokerage by fax. While Western Brokerage has been dismissed from the case at bar, a question of fact remains as to whether this rate-confirmation contract confers personal jurisdiction over David Fishgold as its president. Therefore, given our standard of review regarding summary judgment, we conclude that Hotfoot offered to the circuit court proof of a genuine issue of material fact by submitting (1) its bill-of-lading contract, (2) its rate-confirmation contract, and (3) its amended complaint and exhibits regarding the freight delivery as a substantial connection to Arkansas as the forum state. For these reasons, we hold that the circuit court erred in granting SPM's motion to dismiss appellants' complaint. Accordingly, we reverse and remand for the factual development of the foregoing issues.

■ For their second point on appeal, appellants allege that the circuit court erred in granting the Fishgolds' motions to dismiss appellants' complaint. In their brief, appellants state, "David Fishgold and Louis N. Fishgold conspired to deprive Hotfoot of its earned freight charges. These freight charges were due as a result of a completed contract subject to Arkansas jurisdiction." In their amended complaint, appellants alleged one count of fraud against the Fishgolds, stating that SPM refused payment on the ground that it had already paid [11] Western Brokerage; that SPM denied knowledge of Western Brokerage's location, denied knowledge of their personnel, and refused Hotfoot in its attempts to locate and collect from Western Brokerage; and that the Fishgolds conspired to commit fraud against Hotfoot by constructing the load and then refusing payment. Here, in light of Hotfoot's allegation of fraud, certain questions of genuine issues of material fact exist surrounding the personal jurisdiction of the Fishgolds. *See Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (holding that when a defendant directs intentional, tortious actions at a resident in a forum, the defendant may reasonably anticipate being haled into the forum to answer for its conduct). Thus, we hold that the circuit court erred in granting summary judgment as to the Fishgolds. Accordingly, we reverse and remand on this point as well.

■ For the third point on appeal, appellants argue that the circuit court erred in granting appellees' joint motion for attorney's fees. A decision to grant or deny a motion for attorney's fees will not be set aside absent an abuse of discretion by the circuit court. *Ellis v. Ark. State Highway Comm'n*, 2010 Ark. 196, 363 S.W.3d 321. Because of the circuit judge's intimate acquaintance with the trial proceedings and the quality of service rendered by the prevailing parties' counsel, we recognize the

superior perspective of the trial judge in determining whether to award attorney's fees. *Harrill & Sutter, PLLC v. Kosin,* 2011 Ark. 51, 378 S.W.3d 135. Here, the circuit court granted appellees' motion for attorney's fees and awarded $7,404 in fees to appellees on the motion to dismiss. Because we reverse and remand on the preceding points, we also reverse the circuit court's ruling on appellees' motion for attorney's ₁₂fees and remand for further proceedings.

Reversed and remanded.